ALBERT DAY *vs*. THE CONNECTICUT GENERAL LIFE INSURANCE COMPANY.

A life insurance company refused to receive the premium on one of its policies from a holder on the ground that it had become forfeited by a breach of one of its conditions by the person whose life was insured. The holder, without rescinding the contract, brought an action against the company on an implied promise to receive the premiums and keep the policy in force. Held that the law did not imply such a promise and that the action could not be maintained.

There were three courses open to the holder of the policy in the circumstances. 1. He might elect to consider the policy at an end, in which case he could in a proper action recover its just value. 2. He might institute an equitable proceeding to have the policy adjudged in force, in which case the question of forfeiture could be determined. 3. He might tender the premium and wait till the policy became payable by its terms, and then try the question of forfeiture in a proper action on the policy.

ASSUMPSIT on a policy of insurance issued by the defendants, a life insurance company, upon the life of James B. Colt, in favor of one A. B. West, by whom it was assigned for a valuable consideration to the plaintiff; brought to the Superior Court in Hartford County, and tried to the jury on the general issue, with notice that the defendants should claim that the policy had become void by reason of a breach of one of its conditions by the assured, before *Beardsley, J.*

The declaration set out the policy, which was dated October 27th, 1866, and was for $10,000, averred the performance of all conditions required to be performed by the assured and the said West, the assignment of the policy to the plaintiff, and the payment of the annual premium of $375.10 on the 27th day of October in each year from the issuing of the policy down to and including the year 1871, and a tender of the premium to the defendants on the 27th of October, 1872, and then proceeded as follows:—But the plaintiff says that the defendants, without cause and against the obligation of said policy, wholly refused then or ever to receive or accept the said last named annual premium, and expressly declared that they would not longer continue said policy in force, and that the same had ceased and determined, and had become null and void. And the plaintiff says that the defendants,

Day v. Conn. General Life Ins. Co.

their said promises and undertakings not regarding, have never, since said 28th day of October, 1872, accepted or received said last mentioned premium of insurance, or any premium of insurance upon said policy, and have not continued said policy in force, though often requested so to do, but have wholly neglected and refused to accept or receive said premium or any premium of insurance upon said policy, and to continue said policy in force, and have ever since said last named day continued expressly to repudiate said policy, and to refuse to be bound thereby.

Upon the trial the court charged the jury, *pro formâ*, and against the request of the defendants, that the plaintiff was in law entitled to recover upon proof of the facts alleged in his declaration, unless the jury should find that there had been a breach of the condition of the policy, and that the damages should be the amount of premiums paid upon the policy with interest. The jury returned a verdict for the plaintiff for $3,297, and the defendants filed a motion in arrest of judgment for the insufficiency of the declaration, and also a motion for a new trial for errors in the charge and certain rulings of the court, which motions were reserved together for the advice of this court. As the case was here decided solely upon the motion in arrest of judgment, no further notice is taken of the motion for a new trial.

*H. C. Robinson* and *C. J. Cole*, for the plaintiffs in error.

1. The simple question upon the motion in arrest is—Is a refusal to accept, by a life insurance company, the amount of premium at its maturity, a breach of their contract of insurance, so that an action upon the policy can at once be maintained. The contract of the defendants has been defined often and by the highest authorities. Baron Parke, in *Dalby* v. *India & London Life Ass. Co.*, 15 C. Bench, 365, says: "The contract commonly called life assurance, when properly considered, is a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life." See also *Paterson* v. *Powell*, 9 Bing., 320; *Com.* v. *Weatherby*, 105 Mass., 149.

The undertaking then of the company is simply the payment of a certain sum of money on the happening of a certain event. It is not to be performed before the death of the person whose life is insured. The assured is under no contract obligations under the policy. He makes no promises; he has certain privileges which are conditions of his claim upon the company. As our own court expresses it in *Worthington* v. *Charter Oak Life Ins. Co.*, 41 Conn., 399, "whether the assured will continue it or not is optional with him." And Sir W. M. James expresses the same thing in *In re Albert Life Assu. Co.*, L. R. 9 Eq., 703. See also *Statham* v. *N. Y. Life Ins. Co.*, 3 Otto, 24. This contract of insurance cannot be broken before its time of performance. It will be conceded that this was the old rule both in England and the United States. But it will be contended that the rule has been relaxed, and that an assertion by the company, made in advance of the stipulated time of performance, that they will not fulfill, is a breach. To this we reply: 1st. Such is not the law anywhere in regard to contracts for the payment of money. 2d. The new English rule, as laid down in certain later cases, has not been recognized, but has been rejected, in this country. 3d. A refusal to accept an annual premium is not a repudiation of the contract of a policy of insurance. That a contract cannot be broken by a contractor in advance of his time for performance, was formerly held to be established law. *Philpotts* v. *Evans*, 5 Mees. & Wels., 475; *Ripley* v. *McClure*, 4 Exch., 345. In the case of *Hochster* v. *De la Tour*, 2 Ell. & Bl., 678, the court carried a principle, which had before been laid down in reference to breaches of promise to marry, and which had been placed upon the ground of the peculiarities of the contract for marriage, one step further, and applied it to a hiring of a servant. In *Danube &c. R. R. Co.* v. *Xenos*, 13 Com. Bench, N. S., 825, suit was allowed upon a contract which had been repudiated after the beginning and before the conclusion of the time of performance. The same state of facts existed in *Roper* v. *Johnson*, L. R., 8 C. P., 167, where coal was to be delivered through the months of May and June, and the suit was commenced May 31st.

In *Brown* v. *Muller*, L. R., 7 Exch., 319, there had been an absolute breach. In *Wilkinson* v. *Verity*, L. R., 6 C. P., 206, nothing was decided upon the point, but *Hochster* v. *De la Tour* was cited approvingly as an analogy. In *Frost* v. *Knight*, L. R., 7 Exch., 111, which was another breach of promise case, the language of the court, if meant to apply to all contracts, goes to great length in support of *Hochster* v. *De la Tour*, and the court is driven to the necessity of admitting that a breach in anticipation is a breach of an *inchoate* right. These are the English cases relied upon by the plaintiff. None of them are cases where the contract is for the payment of money. The doctrine of *Hochster* v. *De la Tour*, has frequently been considered by the New York courts, and never fully approved. In *Crist* v. *Armour*, 34 Barb., 378, it was somewhat discussed. The case itself came within another rule, to wit, where the contractor had put it out of his power to perform; but the language of the court is very suggestive. The opinion, in dealing with the matter of executory contracts, approves Judge Parsons's views, (on Contracts, vol. 2, p. 678:) "If one bound to perform a future act, before the time for doing it declares his intention not to do it, this is *no breach of contract*, but if his declaration be not withdrawn when the time comes for the act to be done, it constitutes a sufficient excuse for the default of the other party." And the court say: "It would seem to follow from these cases that when either party to a contract which provides for performance by both parties at the same time and place, before the time for performance arrives, notifies the other that he will not perform, and *does not before the time of performance recall such notice*, or if he puts it out of his power to perform on his part, the other party is relieved from avowing or proving performance." The case of *Hochster* v. *De la Tour* was again cited in *Burtis* v. *Thompson*, 42 N. York, 246, and the court declined to agree with it. In *Howard* v. *Daly*, 61 N. York, 377, which was an action for breach of contract for personal services, the commissioner, Dwight, who gives the opinion, decides the case with the concurrence of his four brother commissioners, upon the ground that the suit was not

brought until after the time when the contract was to begin;
he then discusses and approves the doctrine of *Hochster* v.
*De la Tour* in reference to matters of personal service, but
expressly says, "I presume that it would scarcely be extended
to mere promises to pay money or other cases of that nature,
where there are no mutual stipulations." His associates
however declined to join with him in approving that case.
The same doctrine was again invoked before the same commis-
sioners in *Freer* v. *Denton*, 61 N. York, 492. Commissioner
Earl gives the opinion, and takes pains, while deciding the
case upon other grounds, to say that the doctrine of *Hochster*
v. *De la Tour* "is not settled as the law of New York."
The Supreme Court of Maryland had an excellent opportunity
quite recently to approve *Hochster* v. *De la Tour* and *Frost*
v. *King*, in *Dugan* v. *Anderson*, 36 Maryl., 567, but after an
exhaustive argument in which those cases were urged, they
decline to pass upon the question, and say, (p. 582:) "That
case (*Hochster* v. *De la Tour*,) was decided in 1853, and
gave rise to a controversy in the English courts, in which
their most eminent judges have participated. It may be
doubted whether the controversy is yet ended, and the law of
England in relation thereto finally settled. No decision upon
the subject has yet been made by the House of Lords." The
old English doctrine has been frequently recognized in Massa-
chusetts, and these cases, and the whole doctrine of breaking
contracts by repudiation before maturity, have received a
most masterly investigation by the Supreme Court of that
state in *Daniels* v. *Newton*, 114 Mass., 530, and the principles
claimed by the plaintiffs are distinctly and plainly rejected.
The opinion of the court in that case is an unanswerable
argument for the defendants in the present case. Our own
courts have never recognized the doctrine that there may be
a breach of a contract before the time of performance by an
attempted repudiation. On the contrary the necessity of
waiting for a breach until the day of performance is recog-
nized as almost a legal axiom from the first to the last of our
reports. *Dean* v. *Mason*, 4 Conn., 428; *Blakeslee* v. *Holt*, 42
id., 226. In *Clark* v. *Terry*, 25 Conn., 396, the principle

Day *v.* Conn. General Life Ins. Co.

seems to be clearly declared. The possibility of breaking a contract of insurance before the death of the assured has never been recognized by the courts of England, Connecticut, Massachusetts or New York. Lord Cairns, in a very recent case, *In re Albert Assu. Co.*, L. R., 9 Eq., 703, says: "It is very difficult to see in a case of a policy of insurance, *how there can be a breach of contract short of a refusal to pay upon the falling in of a life.* I know it has been suggested that a refusal to receive the premiums from year to year would be a breach of the contract, and that thereupon an action might be brought. I do not desire to express any opinion upon that point, but *it is somewhat difficult to see how such an action could be maintained, and certainly so far as I know no such action has ever been brought or maintained.*" In *McAllister* v. *N. Eng. Mut. Life Ins. Co.*, 101 Mass., 558, the holder of the policy refused to pay his premium note after it had become due, and accompanied his refusal by the statement that "he would not have anything more to do with the company," and abandoned the whole thing, but his administratix recovered the amount of the policy. In *Howland* v. *Continental Ins. Co.*, 121 Mass., 499, an action like this one was dismissed as premature, on the ground that a policy contract could not be broken before the death of the assured. In *Hayner* v. *Am. Popular Life Ins. Co.*, 36 N. York Superior Ct. R., 211, the court, at the first trial, said that a policy holder had no remedy against a company for an attempted cancellation of a policy; but upon a re-hearing, after the decision of the Cohen case, it was held that he had a right in equity to a restoration of the policy. This case has since passed through the Court of Appeals. In *Cohen* v. *N. York Mut. Life Ins. Co.*, 50 N. York, 610, the Court of Appeals, reversing a judgment below, held that in the case of a policy holder whose premiums had been refused upon insufficient grounds, a court of equity might "*in advance of any present duty, obligation or default, declare the rights and obligations of suitors,*" "*where peculiar circumstances render it necessary to the preservation of rights.*" The decision is distinctly against any theory of a breach of the contract by a refusal to accept the premiums.

A similar result was reached by Judge Blatchford in *Hamilton* v. *Mutual Life Ins. Co.*, 9 Blatch., 234, where he held that if the company improperly refused the premiums, the assured could have his policy declared to be subsisting and not forfeited in a court of equity. *McKee* v. *Phœnix Ins. Co.*, 28 Misso., 383, is quoted by May on Insurance as giving countenance to the theory of the plaintiffs, but an examination of the case shows that no such point was made or decided. In *Union Central Life Ins. Co.* v. *Poettker*, now pending in the Supreme Court of Ohio, it was held by the lower court that the *wrongful* refusal to receive premiums by a company which acted wantonly was a breach of the contract. But the decision rests upon their definition of the contract of insurance, which the court says is an agreement on the part of the insurer to *insure the life from year to year*. The definition is not correct. The Supreme Court of the United States in *Statham* v. *N. York Life Ins. Co.*, 3 Otto, 24, rejects this definition in terms. The court say: "We agree with the court below that the contract is not an *assurance for a single year*, with a privilege of renewal from year to year, by paying the annual premium, *but that it is an entire contract of assurance for life*, subject to discontinuance and forfeiture. The Court of Appeals of New York in several of the cases before cited, give the same definition as the United States Supreme Court. But if the doctrine of *Hochster* v. *De la Tour* is good law, we submit that a refusal to accept premiums made in good faith and accompanied with a declaration that the insurer will treat the policy as forfeited, is not such a repudiation of a contract as amounts to its breach. The same court in England which decided *Hochster* v. *De la Tour*, shortly after held that the refusal to make a breach must be absolute and unequivocal, and must be acted upon by the plaintiffs. *Avery* v. *Bowden*, 5 Ell. & Bl., 714; *S. C.*, 6 id., 953. This was an action arising out of a charter party, one of whose covenants was that the ship should lie at Odessa forty running days, within which time the shipper was to furnish her cargo. The vessel staid at Odessa from March 11th to April 17th. At four different times during this period the officers applied

for cargo, and the shipper replied, "We have none for you," and at last said, "I have no cargo for you, you had better go away." The judges were unanimous in the opinion that this conduct of the agent did not relieve the plaintiff from the obligation to remain the forty days, and that on that account he could not recover. Mr. Benjamin in his work on Sales, 487, discussing this question in its relation to his specialty, says: "A mere assertion that a party will be unable or will refuse to perform his contract is not sufficient; it must be a *distinct, unequivocal and absolute refusal to perform the promise*, and must be treated and acted upon as such by the party to whom the promise is made. It is very clearly established that if an insurance company accepts premiums with knowledge of a forfeiture, it thereby waives the forfeiture. *Bouton* v. *Am. Mut. Life Ins. Co.*, 25 Conn., 542. The refusal of the company was only an act of justice to themselves and of common fairness to the holder of the policy. Nor did the plaintiff accept or treat it as a renunciation. He made no offer to release the policy and to claim his damages, but continued to hold the policy, ready to claim the benefit of it if the person insured should die.

*C. E. Perkins* and *J. C. Day*, for the defendant in error.

The action was not prematurely brought. The authorities, and those of the text writers who touch upon this subject, all agree that when a life insurance company repudiates a policy in the lifetime of the party whose life is insured, an action lies *at once*, as for a breach of contract. *McKee* v. *Phœnix Life Ins. Co.*, 28 Misso., 383; *Hancock* v. *New York Life Ins. Co* , U. S. Circuit Court, 4 Big. Ins. Cases, 488; *Helme* v. *Phila. Life Ins. Co.*, 61 Penn. S. R., 107; *Smith* v. *Charter Oak Life Ins. Co.*, 5 Big. Ins. Cases, 212; *Union Central Life Ins. Co.* v. *Poettker*, id., 449; Bliss on Life Ins., § 417; May on Ins., § 425. It is believed that no case can be found in the books where an action of this kind arising on a policy of life insurance repudiated by the insurance company, has been held not to be sustainable because brought before the decease of the person whose life is insured. In England, in

cases other than those arising on policies of life insurance, the doctrine that an action for damages as for the breach of the contract will lie immediately whenever a contract is distinctly repudiated prior to the time of performance, is now fully established. *Frost* v. *Knight*, L. Reps., 7 Exch., 111, (reversing *Frost* v. *Knight*, L. R., 5 Exch., 322;) *Danube & Black Sea R. R. Co.* v. *Xenos*, 13 Com. Bench, N. S., 825; *Metcalfe* v. *Britannia Iron Works Co.*, L. Reps., 1 Q. B. Div., 634; *Hochster* v. *De la Tour*, 2 Ell. & Bl., 678; *Short* v. *Stone*, 8 Q. Bench, 358; *Ford* v. *Tiley*, 6 Barn. & Cress., 325; *Bowdell* v. *Parsons*, 10 East, 359. This is recognized as established law in England in 2 Chitty on Contracts, 11 Am. ed., 1067. This doctrine has also been acted upon in this country. *Holloway* v. *Griffith*, 32 Iowa, 409, 412; *Crabtree* v. *Messersmith*, 19 Iowa, 180; *Burtis* v. *Thompson*, 42 N. York, 246; *Heard* v. *Bowers*, 23 Pick., 455. See also the opinion of Commissioner Dwight in a case before the New York Commission of Appeals. *Howard* v. *Daly*, 61 N. York, 362. Also *Freer* v. *Denton*, 61 N. York, 492, and a discussion of the question, without decision, in *Dugan* v. *Anderson*, 36 Maryl., 567. Also *Ex parte Pollard*, 2 Lowell, 414. A case closely analogous is *Masterton* v. *Mayor &c. of Brooklyn*, 7 Hill, 61. The English doctrine as now established is much broader than the exigencies of this case require. A recent case in Massachusetts questions the doctrine as one of universal application, but seems to recognize its correctness in its application to a case of the present character. The distinction is made prominent in the case. *Daniels* v. *Newton*, 114 Mass., 530. See also *Mullaly* v. *Austin*, 97 id., 30. A similar limitation of the doctrine is suggested as proper in 2 Parsons on Contracts, 666, and note. The author says: "It might seem more reasonable to permit such an action only when the capacity of the promisor could not be restored before the day, or the promisee had sustained a present injury." Mr. Commissioner Dwight, in *Howard* v. *Daly*, before cited, makes a similar suggestion. The present case falls fully within the doctrine as thus limited. The contract of life insurance is a peculiar one, and unlike any other, and

the doctrine in question is more applicable to it than to almost any other species of contract. There is an implied contract to receive the annual premiums, and thus not only keep the policy in force, but also formally recognize its validity, and this recognition is of great importance to the assured. "The right to keep the policy alive by payment is a privilege secured to the insured by his agreement with the insurer." *St. Louis Mut. Life Ins. Co.* v. *Grigsby,* 10 Bush, 310, 314; *Thompson* v. *Cundiff,* 11 id., 568. The assured purchases a right to have the policy kept in force. *Worthington* v. *Charter Oak Life Ins. Co.,* 41 Conn., 399. "The obligation to pay and the obligation to receive are mutual." *Cohen* v. *N. Y. Mut. Life Ins. Co.,* 50 N. York, 610, 625. By the refusal to receive the premiums, and the repudiation of the contract, the assured "sustains a present injury" in various ways; for instance, the policy becomes practically worthless for the purpose of raising money upon it, which is a common and legitimate use of a policy. See *N. York Life Ins. Co.* v. *Statham,* 3 Otto, 24. Great practical injustice would be done if in a case of this kind no action could be sustained until the decease of the party whose life is insured. *Union Central Life Ins. Co.* v. *Poettker,* 5 Big. Ins. Cases, 449.

CARPENTER, J. This action is brought upon a policy of insurance upon the life of James B. Colt. The policy is recited in the declaration. It is then averred that the defendants assumed and faithfully promised to perform all the stipulations and agreements in that instrument on their part to be performed, and to keep the policy in force for the term of the whole continuance of the life of the said Colt upon the terms and conditions therein set forth. It then alleges payment of the annual premiums until October 28th, 1872, on which day another payment fell due for the year then next ensuing, and a tender of the amount due that day, and a refusal of the defendants to receive it. It also alleges an express declaration by the defendants that they would not longer continue the policy in force, and that the same had ceased and determined and had become null and void. A

verdict was rendered for the plaintiff, and the defendants filed a motion in arrest of judgment for the insufficiency of the declaration. The questions arising on the motion were reserved for the consideration of this court.

It is not claimed that the alleged promise to keep the policy in force is found in terms in the policy. The only express promise found therein is to pay the policy upon the death of the insured—a contract to pay in the future a certain sum of money. But it is claimed that there is an implied promise to receive the premiums and keep the policy in force, and a breach of this implied promise constitutes the plaintiff's whole cause of action. "Implied contracts," says Blackstone, "are such as reason and justice dictate, and which therefore the law presumes that every man undertakes to perform." "Implied contracts are those which are raised by operation of law." 1 Swift's Digest, 175. The law raises no contract by implication unnecessarily. Therefore when substantial justice may be done without it, if the party in whose behalf it is claimed does not need it to protect him in the enjoyment of some legal right, and the party against whom it is claimed does not otherwise obtain some unfair and illegal advantage, no contract will be implied. Let us test this case by an application of these principles.

The plaintiff purchased this policy with knowledge of the nature of the contract, the conditions therein contained, and the obligations thereby imposed. He assumed the liabilities and the risks growing out of the conditions without any expectation of receiving any thing in return until the policy by its terms should become payable. When it does become payable the defendants must pay it unless they have a legal defense. If the policy had become null and void, as the defendants claimed, that would be a legal defense. But the jury found against the defendants on that claim, and the question recurs as to the legal effect of refusing to receive the premiums and improperly declaring the policy void. These were the defendants' acts alone, not only without the concurrence of the plaintiff, but against his wishes. It certainly requires no argument to show that neither of these acts, nor

both combined, would be any defence to the action. The plaintiff then would possess all his legal rights unimpaired, notwithstanding the action of the defendants.

But it may be said that the refusal of the defendants to accept the premium and recognize the continued existence of the policy raises a doubt as to its validity, and throws a cloud, so to speak, over the plaintiff's property. This may be so; but the claim that a contract has become null and void by reason of the violation of some condition therein contained is not an invasion of the legal rights of the other contracting party. If the claim is not well founded the party claiming it will take nothing by it, and the legal rights of the other party will remain unimpaired. This must be true of most contracts; hence there will be no occasion to invoke the aid of the law to imply a contract in addition to that expressed by the parties. If however by reason of the peculiar nature of this contract, and the length of time which may elapse before a suit can be brought on the express promise, there is danger that the party may be prejudiced, perhaps a court of equity upon a proper petition might have power to determine the question of forfeiture in advance, and if found not to exist to declare the policy to be in full force. But however this may be, we think it is quite clear that justice may be done and the rights of the plaintiff fully protected without resorting to an implied contract. Nor can it be successfully claimed that the defendants by their action obtained any undue or illegal advantage. If they were mistaken in their claim that the policy was forfeited, and if it be true that the policy notwithstanding such claim remains in full force, and that the defendants in due time will be liable thereon, the result of the defendants' course will simply be the loss of interest more or less on the premiums. The advantages of such a result would be with the plaintiff and not with the defendants.

Again, the law raises an implied contract ordinarily and perhaps always for the purpose of carrying into effect the presumed intention of the parties. When therefore the consequence will be something entirely different from that contemplated by the parties, or if the court cannot clearly

see that the probable consequences were intended by the parties, no contract will be implied. Let us apply this test. We will suppose that the defendants really and in good faith claimed that the policy was forfeited by a breach of the condition. They could not receive the premium without thereby waiving the forfeiture; and if they could, common fairness would require that they should give notice of their intention to claim the forfeiture and decline to take the premium. Now according to the plaintiff's claim they could not do this, if unsuccessful, without forfeiting all their advantages in the contract; yea more, they not only lose all profits, but they have actually carried the risk during all the time the policy was in force. It is in the nature of a penalty for making a legal claim in good faith in a court of justice. It cannot be presumed that the parties intended this. Penalties and forfeitures are odious to the law, and where they are necessarily involved in the consequences of an implied contract, no contract will be implied. But if there is no forfeiture in respect to just profits, the rule of damages being, instead of the premiums paid with interest, the plaintiff's proportion of the reserve, even then the contract would seem to be terminated with a loss to the company of all future profits. The law will not presume that that was the intention of the parties. If the contract was not terminated then a more serious objection to an implied contract arises—a possible liability on both an implied and an express promise; in other words a liability to refund the premiums or pay the value of the reserve on an implied promise, and ultimately to pay the sum named in the policy on the express promise.

We think therefore upon principle that the law raises no such contract as the plaintiff contends for.

We are also of the opinion that the authorities cited in support of the plaintiff's claim are not exactly in point, and do not support the conclusion arrived at. The leading cases are *Hochster* v. *De la Tour*, 20 E. L. & E., 157, and *Frost* v. *Knight*, Law Reports, 7 Exch., 111. The first was an action on a contract to employ the plaintiff as a courier, to commence at a certain day. Before the time arrived the defendant

repudiated the contract and declared he would not perform it. It was held that the plaintiff might treat that as a breach and sue as for a breach of the contract before the time appointed for it to commence. The ground of the decision will appear from the following, which we copy from the opinion of Lord Campbell, C. J. "But it cannot be laid down as a universal rule that where by agreement an act is to be done on a future day no action can be brought for a breach of the agreement till the day for the doing the act has arrived. If a man promises to marry a woman on a certain day, and before that day marries another woman, he is instantly liable to an action for breach of promise of marriage. If a man contracts to execute a lease on and from a future day for a certain term, and before that day executes a lease to another for the same term, he may be immediately sued for breaking the contract. So if a man contracts to sell and deliver specific goods on a future day, and before the day he sells and delivers them to another, he is immediately liable to an action at the suit of the person with whom he first contracted to sell and deliver them. One reason alleged in support of such an action is, that the defendant has before the day rendered it impossible for him to perform the contract at the day; but this does not necessarily follow, for prior to the day fixed for doing the act the first wife may have died; a surrender of the lease executed might be obtained; and the defendant might have re-purchased the goods, so as to be in a situation to sell and deliver them to the plaintiff. Another reason may be that, when there is a contract to do an act on a future day, there is a relation constituted between the parties, in the mean time, by the contract, and that they *impliedly promise* that in the mean time neither will do anything to the prejudice of the other inconsistent with that relation. As an example, a man and woman engaged to marry are affianced to one another during the period between the time of the engagement and the celebration of the marriage. In this very case of traveller and courier, from the day of the hiring till the day when the employment was to begin they were engaged to each other, and it seems to be a

breach of an *implied contract* if either of them renounces the engagement."

Here the words "impliedly promise" and "implied contract" are used in a very general sense, and not as indicating technically a promise or agreement on which an action can be brought. They seem to be used to indicate, not an independent agreement, but something incident to and forming a part of the express promise and inseparable from it, a breach of which was regarded as evidence of or equivalent to a breach of the express contract. The action it will be observed was not brought on an implied contract "not to renounce the engagement" but on an express promise to hire the plaintiff. So too of the examples put by way of illustration. Lord Campbell does not say that an action will lie on an implied promise not to lease to another, or not to sell and deliver the goods to another, but on the express promise to lease or to sell and deliver goods to the plaintiff.

The case of *Frost* v. *Knight* was an action on a promise to marry on the death of the defendant's father. While the father was yet living the defendant broke off the engagement. It was held that an action would lie immediately. The court says that by the contract of marriage a "new status, that of betrothment, at once arises between the parties. This relation it is true has not by the law of England the same important consequences which attached to it by the canon law and the law of many other countries. Nevertheless it carries with it consequences of the utmost importance to the parties. Each becomes bound to the other; neither can consistently with such a relation enter into a similar engagement with another person; each has an *implied right* to have this relation continued till the contract is finally accomplished by marriage." Here too it will be observed there is no intimation that a suit may be brought for a breach of an implied agreement, but substantially the same language is used, and in the same sense, and for the same purpose, as that used in *Hochster* v. *De la Tour*. It will be remembered also that the action was not brought on an implied promise not to marry another person, but on the express promise to marry the

plaintiff. In this case it is different. The action is not brought on the express promise which the defendants entered into to pay money, but on an alleged implied promise to receive the premiums and keep the policy in force.

The cases referred to are leading cases on the subject of maintaining actions on promises before the time arrives for their performance. They have been followed by some of the American courts. In *Burtis* v. *Thompson*, 42 N. York, 246, they were apparently followed, but in *Freer* v. *Denton*, 61 N. York, 492, a majority of the court of commissioners hesitated, and it may be regarded as an open question in that state. In *Dugan* v. *Anderson*, 36 Maryland, 567, the question was discussed but not decided. In Massachusetts they have been rejected, and the soundness of the principle upon which they rest questioned. *Daniels* v. *Newton*, 114 Mass., 530. We have now no occasion to say whether in a case exactly in point we should or should not follow them, and purposely leave it an open question. We would remark however that the cases seem to establish the proposition that an action may be brought upon a contract in advance of the time fixed for its performance, where the conduct of the other party has been such as to work a practical destruction of the contract or to deprive the plaintiff of all benefit to be derived therefrom. The execution of a lease, and the sale of goods to another party, and the marrying another, seem to be cases of this character, notwithstanding the criticism of Lord Campbell. The parties had placed themselves in a position in which it was impracticable for them to fulfill the contract and which rendered it morally certain that they would not and could not perform it. Not so in the present case. Nothing done by the defendants rendered it impossible for them to perform their contract, or in any way interfered with the payment of money when it should become due. The cases referred to were not contracts for the payment of money. One was a contract for hiring, the other was an agreement to marry. When in the one case there was a declaration by one party that he would not hire, and that was accepted by the other as an end of the contract, and in the other case one party mar-

ried another person, there was in each case an effectual and substantial breach of the contract. The thing agreed to be done could not or would not be done, and nothing was left but for the party in fault to compensate the other in damages. The damages can be ascertained perhaps as well in an action brought before the time for performance as afterwards. Hence an action on the express contract for a breach has been maintained. In this case the contract is to pay money at a future day. Until that day arrives there can be no breach. The party promising may cease to exist or become bankrupt before the day, so that it will be morally certain that the contract will not be performed; but that is no breach, and will not justify the bringing of an action on the contract.

No act of the promissor in a case like this without the consent of the promissee will rescind or terminate the contract, and no act of his before the time will amount to a breach. The declaration that he will not pay or cannot pay does not relieve him of his obligation. That still remains in force, and when the time arrives, if of sufficient pecuniary ability, he may be compelled to perform specifically, that is, to pay the money. The reason that he gives that he will not pay— that the promisee has done some act or omitted to do something whereby the contract is forfeited—does not strengthen the claim. The reason may or may not be true. If it is true that of itself ends the contract and no action can be maintained at any time. If it is not true the claim amounts to nothing. It is no invasion of the legal rights of the other party, as the contract still remains in force. The claim of the plaintiff therefore is really this:—if an insurance company makes a claim that the policy is forfeited by a breach of some condition contained in it, and the claim is not maintained, the policy is thereby converted into a contract to pay money at an earlier day, or that some obligation to pay money arises by implication of law *dehors* the express contract, and in some measure independent of it, which may be enforced immediately. Neither position is tenable, and neither can be maintained upon principle or by authority.

This case is also to be distinguished from a class of cases where both parties concur in treating a contract as rescinded, or, what is the same thing, where one party repudiates the contract and declares that he will not perform it, and the other thereupon elects to treat the contract as at an end and brings an action as for a breach. In such cases actions may be maintained either on the express contract or on an implied contract. Where one party has paid money or performed services for which he has not received a fair equivalent, the law will, if need be, imply a contract to refund or pay what is equitably due in order to prevent injustice. And this principle has been applied to insurance cases.

In *McKee* v. *The Phœnix Life Insurance Co.*, 28 Missouri, 383, it was held that "if the defendant company wrongfully determined the contract by refusing to receive a premium when due, then the plaintiff had a right to treat the policy as at an end, and to recover all the money she had paid under it."

In *Howland* v. *The Continental Life Insurance Co.*, 121 Mass., 499, the premium fell due on Sunday, and payment was tendered on Monday and refused. A suit was brought eleven months afterwards, with no previous notice to the company that the plaintiff elected to abandon the policy. The court held that the suit could not be maintained, on the ground that the election was not within a reasonable time.

In *McAllister* v. *The New England Mutual Life Insurance Co.*, 101 Mass., 558, the insured refused to pay a premium note, and declared that "he would not have any thing more to do with the insurers and abandoned the whole thing;" but he retained the policy and the insurers retained the note, nor did it appear that they consented to the abandonment. It was held that the policy remained in force.

These authorities show, and that alone is the purpose for which we cite them, that in order to terminate the policy in such cases the concurrence of both parties is necessary.

In *Haynes* v. *The American Popular Life Insurance Co.*, 69 N. York, 435, the company refused to receive the premiums, claiming that the policy had lapsed. The plaintiff brought an action against the company to have the policy

adjudged in force, and obtained judgment.   The judgment was affirmed by the Court of Appeals.   In *Cohen* v. *The New York Mutual Life Insurance Co.*, 50 N. York, 610, it was held that the court might exercise equity powers and declare the legal status of the parties.

Thus it would seem that a person situated as the plaintiff was may choose between two remedies—1st. He may elect to consider the policy at an end; in which case, with a declaration containing proper averments, he may recover the equitable and just value of the policy.   He ought not to recover more, as the policy was terminated by mutual consent, and it does not seem to be a case where either party ought to be subjected to penal consequences.   Of course such a case should depend upon the question whether the policy was rightfully declared forfeited.   If it was, the plaintiff can not recover; if it was not, he will recover the full value of the policy.   2d. If he desires that the policy shall continue, he may institute a proceeding to have it adjudged to be in force, in which case the question of forfeiture may be determined. In that case the rights of the parties will be determined in a reasonable time, the parties will be relieved of suspense, and if it is decided against the forfeiture both parties will have what they originally contracted for.

Perhaps a third course is open to him, and that is, to tender the premium, and, if refused, wait until the policy by its terms becomes payable, and then test the forfeiture in a proper action on the policy.   This course may involve delay for a long series of years, during which both parties will be in uncertainty as to their legal rights; and it will be attended with this further disadvantage, that both parties may find it difficult to obtain proper proof.

The plaintiff in this case pursued an entirely different course.   He did not wait for the policy to become a claim, he did not resort to a court of equity to have the policy established, and he did not elect to consider the policy at an end. But he brought a suit on an alleged implied promise, and seeks to recover the full amount of the premiums paid with interest, leaving the question of the defendants' liability on

the express promise contained in the policy an open one. This we think cannot be done.

The plaintiff's declaration is insufficient, and the Superior Court is advised to arrest the judgment.

In this opinion the other judges concurred.