HENRIETTA BARTLETT *vs.* GEORGE H. RAIDART, EXECUTOR.

First Judicial District, Hartford, March Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

A contract implied by law from the circumstances surrounding a transaction is a true contract in the sense that it grows out of the intentions of the parties and is dictated by their mutual and accordant wills, whereas a quasi-contract, as the name implies, is no contract at all, but an obligation created by law regardless of the contractor's intent and even in direct opposition to it.

When the parties are strangers to each other, the requested rendition of valuable services by one and their voluntary acceptance by the other ordinarily furnish a strong basis for the inference of a mutual expectation of compensation.

The trial court found that after the aged testatrix was left alone in her home through the removal of her son to a hospital, she requested the plaintiff, a stranger, to spend the night with her; that, during the ensuing three months, plaintiff, who was

regularly employed as a trained nurse during the day by the Winsted Visiting Nurse Association, devoted her nights, Saturday afternoons and Sundays without compensation to the care of the testatrix who, though not in need of trained assistance, did require companionship and personal services frequently of an unpleasant nature; and that when plaintiff attempted to discontinue the relationship she was urged to remain by the testatrix who assured her that she "would be taken care of," from which plaintiff derived the impression that she would be paid by testamentary provision, but neither that nor any other form of remuneration was ever specifically discussed or promised. The trial court concluded that plaintiff was not entitled to recover the reasonable value of her services. *Held* that this conclusion was not supported by the subordinate facts which required, as a matter of law, the inference that the testatrix intended, and was expected, to recompense the plaintiff.

Argued March 6th—decided June 14th, 1928.

ACTION to recover the reasonable value of services as a nurse, alleged to have been rendered by the plaintiff to the defendant's testatrix, brought to the Court of Common Pleas for Litchfield County and tried to the court, *Hamlin, J.;* judgment for the defendant, and appeal by the plaintiff. *Error; judgment directed for plaintiff, and new trial ordered only for assessment of damages.*

*Hadleigh H. Howd,* for the appellant (plaintiff).

*Wilbur G. Manchester,* for the appellee (defendant).

WHEELER, C. J. The action is for services which the plaintiff claims she rendered the defendant executor's testate, Mrs. Anna Smith, between September 6th and December 4th, 1926. The plaintiff, a qualified trained nurse, resided in Winsted near the residence of Mrs. Smith and was employed by the Winsted Visiting Nurse Association daily from 9 a. m. until 5 p. m. except on Saturday afternoons and Sundays. Mrs. Smith was a widow in her ninety-first year and

Bartlett *v.* Raidart.

lived with her son. On the night of September 4th, 1926, Mrs. Smith's son became ill and she called the plaintiff, then a stranger to her, to come to her home and care for him. He was removed to the hospital the third day thereafter; on that night Mrs. Smith telephoned the plaintiff to come to her home and remain with her that night as she was afraid to remain alone. The plaintiff spent, between these dates, eighty-nine nights at the residence of Mrs. Smith; she slept with her much of the time, rendered her all the care deemed necessary, prepared and gave her such stimulants and water as she desired, gave her a bath each Saturday night, and rendered her assistance when she had soiled her clothes. The services could have been rendered by a person not a trained nurse, but not so efficiently. Mrs. Smith's meals were prepared at the adjacent residence of Mrs. Bond, where the plaintiff lodged and boarded. The plaintiff took meals to Mrs. Smith, and on Saturday afternoon and Sundays took her own meals to Mrs. Smith's in order to keep her company, but paid for her own meals and lodgings at Mrs. Bond's. On some of these Saturday afternoons and Sundays during this period the plaintiff took Mrs. Smith to ride in the automobile of the Nursing Association, which she was accustomed to use. Mrs. Smith did not employ a doctor during this period. She did not require the care of a trained nurse. She did need companionship at night when alone in her home. When the plaintiff at one time suggested to Mrs. Smith that she discontinue her attendance, Mrs. Smith requested her to remain. The plaintiff had an impression that Mrs. Smith would leave her something in her will. Mrs. Smith never said specifically that she would, but did say that the plaintiff would be taken care of. The plaintiff never asked any payment of, or rendered any bill to, Mrs. Smith, or kept any account of serv-

ices rendered to Mrs. Smith, or discussed the subject of payment with her. On December 4th, 1926, Mrs. Smith moved to the residence of Mrs. Bond and thereafter the plaintiff rendered no services to Mrs. Smith. The plaintiff made out against the estate of Mrs. Smith a bill at the rate of $5 a night, and later another bill at the rate of $3 a night. The plaintiff first valued her services for the Sundays at $5 a day and later at $3.

The facts found by the trial court do not establish an express contract, either written or oral. Neither do they establish a *quasi*-contract, which is not a contract at all but an obligation which the law creates out of the circumstances present, although the contractor did not assume the obligation, and may not have intended it but in fact actually dissented from it. Unjust enrichment is said to be the most important source of *quasi*-contractual obligations. We described in *Sibley* v. *State*, 89 Conn. 682, 686, 96 Atl. 161, the quasi-contract in these terms: "The term *quasi*-contract describes a situation where there is an obligation or duty arising by law upon which the same remedy is given as would be given if the obligation or duty arose out of contract. The term itself implies that the obligation or duty is not a contractual one." The civilians termed these, *obligationes quasi ex contractu.*

These classes of contracts were very commonly denominated implied contracts, as we find in 1 Swift's Digest, 175, and *Day* v. *Connecticut General Life Ins. Co.*, 45 Conn. 480, 490. They are not implied by law, they are created by law. The use of this classification led to the confusion between the contracts arising out of the operation of law and those which were implied from the circumstances. "All true contracts" as Mr. Justice Lowrie writes in *Hertzog* v. *Hertzog*, 29 Pa. St. 465, 467, "grow out of the intentions of the parties to the transactions, and are dictated . . . by their mutual

and accordant wills." They may be expressed in words, or they may be inferred or implied from the circumstances and these are called implied contracts. They are implied out of the facts; these establish the contract just as truly as though the intention of the parties had been committed to paper, or expressed by word of mouth. "A true 'implied contract' on the other hand, is one which may be inferred from the conduct of the parties, though not expressed in words." *Weinhouse* v. *Cronin,* 68 Conn. 250, 253, 36 Atl. 45.

The plaintiff's right to a recovery must depend upon whether there should be inferred or implied in the facts found by the trial court that the parties intended to make a contract obligating the plaintiff to render these services and the testatrix to compensate her for them. If this can be and should be inferred there is a true implied contract in the facts. The services were rendered by the plaintiff over this period and were valuable. They were rendered at the request of Mrs. Smith and continued at her request when the plaintiff was about to discontinue them. The services were performed by a stranger to Mrs. Smith, by a woman who carried on her regular work as nurse during the daytime and then passed her nights, Saturday afternoons and Sundays with Mrs. Smith, caring for her. The services required were not infrequently unpleasant in their nature. It would have been an extremely unreasonable conclusion for Mrs. Smith to reach that the plaintiff was performing these services for her as a gratuity. No motive or reason for the plaintiff doing this gratuitously is found. Mrs. Smith's statement to the plaintiff when she attempted to discontinue the service that she would take care of her was quite capable of being understood by the plaintiff as a proposal to take care of her in her will. It affords some ground for an inference that neither the plaintiff nor Mrs. Smith expected

these services to be a gratuity. It also furnishes a reason why the plaintiff did not make claim for compensation in the lifetime of Mrs. Smith. Ordinarily, where valuable services are rendered upon the request of another and voluntarily accepted, between parties who are strangers to each other, strong basis is furnished for the inference or implication that it was the intention of the parties that the services were to be paid for. *Gillette's Appeal,* 82 Conn. 500, 503, 74 Atl. 762; *Cotter* v. *Cotter,* 82 Conn. 331, 332, 73 Atl. 903; *Weinhouse* v. *Cronin,* 68 Conn. 250, 253, 36 Atl. 45. The elements of a contract are present in the facts found—the employment of the plaintiff at the request of the testatrix, and the inference that the services were rendered in the expectation of both plaintiff and testatrix that they would be paid for.

The trial court was right in its understanding that claims against a decedent's estate should be allowed only upon clear and satisfactory proof that the services were rendered upon an agreement that they would be paid for. It was in error in failing to recognize that the facts proven required the inference that the intention of the plaintiff was that she would receive compensation for her services and the intention of the defendant's decedent was an acquiescence in this expectation.

There is error, the judgment is reversed and the Court of Common Pleas for Litchfield County directed to enter its judgment for the plaintiff and a new trial is ordered only for the assessment of the damages.

In this opinion the other judges concurred.