SHELTON YACHT AND CABANA CLUB, INC., ET AL. *v.*
FRANK C. SUTO ET AL.

H. GLEN CHAFFER ET AL. *v.* BLANCHE ZUCKERMAN
ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued December 4, 1962—decided January 15, 1963

*Thomas B. Coughlin,* for the appellants (plaintiffs in the first case and defendants in the second).

*Raymond C. Lyddy,* for the appellees (defendants in the first case and plaintiffs in the second).

KING, J. These two cases were tried together and are here on a combined appeal. In the Shelton case, in which damages were sought for the breach of three written contracts, the court concluded that the plaintiffs had failed to sustain their burden of proof by the more credible evidence and that consequently judgment must be, as it was, rendered for the defendants. Although the plaintiffs in that case appealed, they filed no assignment of errors attacking these conclusions. The plaintiffs in the Shelton case are among the defendants-appellants in the Chaffer case, and the record is in some confusion because the appellants in both cases employed a single assignment of errors for appeals in the two wholly separate cases. We find no effective assignments of error properly directed to the Shelton case, and the appeal in that case will not be further discussed. Practice Book § 409; *H. Duys & Co., Inc.* v. *Tone,* 125 Conn. 300, 312, 5 A.2d 23; Maltbie, Conn. App. Proc. § 167.

There is left for consideration only the appeal in the case in which H. Glen Chaffer, Frank C. Suto and the company operated by them, Heritage Advertising Agency, Inc., hereinafter referred to as Heritage, brought suit against Blanche Zuckerman and two companies operated by her under the names of the Pinecrest Country Club, Inc., hereinafter referred to as Pinecrest, and the Shelton Yacht and Cabana Club, Inc., hereinafter referred to as Shelton. The original complaint was in three counts,

but during the course of the trial a fourth count was added. Judgment was rendered for the defendants on all counts except the first. In the first count, which involved only the plaintiff Heritage and the defendant Blanche Zuckerman, it was alleged that Blanche retained Heritage for the purpose of promoting and advertising the formation of Pinecrest, which was to be a country club; that two other agreements were made by Heritage and Blanche, one concerning the exclusive right to sell memberships in Pinecrest and the other concerning the sale of memberships in Shelton; and that, in reliance on those agreements, Heritage proceeded to advertise both organizations and in so doing incurred expenses and obligations the fair value of which was approximately $10,500, an amount which Blanche refused to pay. On this first count, judgment was rendered in favor of Heritage for $9,409.63.

Error was assigned in certain evidential rulings. Some of them were not pursued in the brief of Blanche Zuckerman, hereinafter referred to as the defendant, and must be treated as abandoned. *Yale University* v. *Benneson,* 147 Conn. 254, 255, 159 A.2d 169; Maltbie, op. cit. § 327. The assignments pursued in the brief involve claims under the parol evidence rule, and these we now consider.

Evidence relating to unwritten negotiations and agreements was admitted over the objection of the defendant that all preceding unwritten agreements were completely integrated in three written contracts and that the evidence objected to was inadmissible because it was in violation of the parol evidence rule. Under that rule, if a written contract is found to be the final repository of agreements made between the parties, evidence of a prior un-

written agreement would not be allowed to have any effect on the agreement as integrated in the writing. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885; *Jarvis* v. *Cunliffe,* 140 Conn. 297, 299, 99 A.2d 126; 3 Corbin, Contracts § 573. The parol evidence rule is a rule of substantive law rather than a rule of evidence, and the essence of an objection under it is that even if the evidence objected to is admitted, it would be ineffective, and thus immaterial, because it could not legally affect the rights of the parties as defined in the writing. *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A.2d 605. Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention, evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances. If the evidence leads to the conclusion that the parties intended the written contracts to contain the whole agreement, evidence of oral agreements is "excluded," that is, excluded from consideration in the determination of the rights and obligations of the litigants, even though it is admitted on the issue of their intention. *Cohn* v. *Dunn,* 111 Conn. 342, 346, 149 A. 851. Ordinarily, if not invariably, evidence of the intention will include evidence as to the content of the oral negotiations. 9 Wigmore, Evidence (3d Ed.) p. 98.

Error was assigned in certain rulings of the court admitting testimony as to the oral negotiations. Insofar as the rulings were attacked in the brief, they involved the admission of evidence relevant to the crucial question of intention, and consequently were not erroneous.

There remain for review the findings and conclusions of the court below. The assignments of

error seeking some nineteen additions to the finding avail the defendant nothing, since in her brief she fails to point out anything which shows that any of the facts sought to be added were admitted or undisputed. *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634. Of some nineteen deletions from the finding sought in the assignments of error, only four are material to the determination of this appeal. No mention is made of any of the four in the appellant's brief, and consequently the appellee, Heritage, was entitled, as it obviously did, to treat them as abandoned. *Martino* v. *Grace-New Haven Community Hospital,* 146 Conn. 735, 736, 148 A.2d 259. This abandonment in turn absolved the appellee from the necessity of complying with the requirements otherwise resting on it under § 447 of the Practice Book, as explained in cases such as *Cushing* v. *Salmon,* 148 Conn. 631, 632, 173 A.2d 543 and *Engelke* v. *Wheatley,* 148 Conn. 398, 411, 171 A.2d 402. *Kielb* v. *Weinberg Realty Corporation,* 147 Conn. 677, 680, 165 A.2d 601. It follows that none of the corrections of the finding sought can be made.

The material portions of the finding will now be summarized. On or about June 1, 1956, H. Glen Chaffer and Frank C. Suto, who were the principal stockholders of Heritage, were introduced to the defendant. Heritage was a corporation engaged in merchandise and product advertising in the Bridgeport area. The defendant stated that she was interested in some property for possible use as a shopping center. Later, she thought that a country club would be more appropriate. Heritage was authorized to take all the steps necessary to advertise the proposed country club through any advertising medium available and to incur expenses and finan-

cial obligations in connection with the advertising. All of the expenses and obligations were to be paid by the defendant. Between June 1, 1956, and May 1, 1957, Heritage performed services for the defendant, by planning the layout of Pinecrest, advertising the club in various advertising media and securing the services of tradesmen to construct the planned facilities. Much of the work being done was in Heritage's usual line of business as an advertising agency, and there was evidence that it was not customary for the parties to an advertising agreement to enter into a written contract. On September 20, 1956, Heritage and Shelton entered into two written contracts, in which Heritage promised to advertise, promote and sell memberships in the club and to lease slips in the marina being promoted by Shelton. Both prior and subsequent to September 20, 1956, Heritage planned, promoted and advertised the existence and proposed facilities of the club and marina. Blanche Zuckerman knew of the work being done by Heritage and accepted all of the benefits. She received bills for the work and paid them. All of the services were rendered, and all of the expenditures were made, on behalf of the defendant and in the promotion of her various interests.

These findings justify the court's conclusions to the effect that there were verbal negotiations amounting to an oral contract and a course of dealing resulting in an implied contract; that each contract was between Heritage and Blanche Zuckerman; that the oral contract was concerned with the expenses paid and incurred by Heritage in promoting Pinecrest; and that the implied contract was concerned with services rendered by Heritage in promoting Pinecrest and Shelton. *Freda* v. *Smith,* 142 Conn. 126, 134, 111 A.2d 679; *Bartlett* v. *Raid-*

*art,* 107 Conn. 691, 694, 142 A. 398. On these findings and conclusions, Heritage would be entitled to judgment as rendered unless merit is found either in the claim of the defendant that the judgment was reached in violation of the parol evidence rule or in her claim that the pleadings do not warrant the judgment.

Under the parol evidence rule, the question for the trial court, in considering the evidence of the oral negotiations, "becomes one of the inherent probability that parties contracting under such circumstances would or would not make the agreement in writing and also the alleged oral agreement. 2 Williston on Contracts (1920 Ed.) § 638 [now 4 Williston, Contracts (3d Ed.) § 638]. 'In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transactions on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. . . .' 5 Wigmore on Evidence (2d Ed.) § 2430 [now 9 Wigmore, Evidence (3d Ed.) § 2430]." *Cohn* v. *Dunn,* 111 Conn. 342, 347, 149 A. 851. The presumption of the controlling effect of the written agreement which arises when both the written and unwritten agreements cover similar subject matter is a rebuttable one. *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 701, 46 A.2d 605.

Three written contracts were entered into by the parties, and each contract is an exhibit. Only the two contracts, referred to above, both dated September 20, 1956, are relevant to this appeal. One

of the parties to each was Heritage. The other party was Shelton, which acted through Blanche Zuckerman. One of the contracts stated that Heritage agreed to "advertise, promote and sell memberships" in Pinecrest for Shelton. Heritage agreed to "screen and otherwise do the necessary paper work incurred in signing up memberships." It also agreed "to help acquire suitably qualified personnel to operate the . . . [club]." Shelton in turn agreed "to give . . . [the agency] a commission of 5 . . . [percent] on all memberships sold between . . . [September 20, 1956] and December 31, 1958." A fund of $800 was to be set up by Shelton for a descriptive booklet, and a fund of $2000 for "other advertising and promotion expenses." In the other written contract, Heritage obligated itself to "advertise, promote and lease . . . Marina slips" in Shelton, which in turn was to set up a fund of $1500 "for the purpose of advertising and promoting the sale of the . . . slips." Heritage was to check and screen all applicants for slips and to receive a commission of 5 percent on all sales of slips made during the first two years.

Parts of the two written agreements as well as the unwritten agreements, on their face appear to relate to the same general subject, namely, the advertising and promotion of the projects of the defendant. Thus, a presumption arose that the written contracts were intended to represent all the negotiations relating to that subject. *Cohn* v. *Dunn*, 111 Conn. 342, 347, 149 A. 851. The court specifically found, however, that the written agreements called for promotion work outside the normal and usual course of Heritage's business; that the services rendered under the unwritten agreements had nothing to do with the actual selling of memberships or

the leasing of marina slips; that the work was outside the scope of the written contracts; and that, when the defendant paid the bills for these services, she did so from funds other than those particularly established for the purpose under the written contracts. These findings sufficiently support the ultimate conclusions, implicit in the judgment, not only that it was the intention of the parties that the written contracts should not cover the matters included in the unwritten agreements but also that the written contracts in fact did not cover those matters. These conclusions are further strengthened by the fact that Blanche Zuckerman was not a named party to the written contracts. Consequently, the parol evidence rule did not render ineffective the unwritten agreements. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885; 3 Corbin, Contracts § 594.

One further claim of the defendant was that Heritage had brought suit on written contracts only and had then sought recovery on implied agreements. This procedure was attacked on the ground that reliance by a plaintiff on an express contract precludes proof of a right to recover on an implied contract, under the rule of cases such as *O'Keefe* v. *Bassett,* 132 Conn. 659, 663, 46 A.2d 847 and *Collins* v. *Lewis,* 111 Conn. 299, 304, 149 A. 668. This rule is inapplicable where, as the court found here, an express contract covers one set of obligations and an implied contract covers another set of obligations. Although the allegations contained in the first count of the complaint are not formulated with desirable precision, they are broad enough to permit recovery on one or more contracts, whether these are, in whole or in part, implied, oral or written.

The trial court allowed recovery in the amount of $9409.63, which was the amount shown in an exhibit purporting to be a statement of account. The court found that amount to be due and owing for work done and moneys expended outside of, and apart from, either written contract. In this determination there was no error.

There is no error in either appeal.

In this opinion the other judges concurred.