ROBERT DAMORA *v.* VICTOR CHRIST-JANER

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued March 11—decision released May 5, 1981

*Richard B. Cramer,* with whom, on the brief, was *Daniel Y. Sachs,* for the appellant (plaintiff).

*Gordon R. Paterson,* for the appellee (defendant).

PER CURIAM. The plaintiff brought this action seeking to recover the value of services performed pursuant to an oral agreement and for a breach of an oral agreement with the defendant. From the judgment rendered in favor of the defendant, the plaintiff has appealed.

The trial court could have reasonably found the following: The plaintiff is a highly respected architectural photographer, and the defendant is a highly regarded architect. At the time of this lawsuit the two had known and intermittently worked with each other for twenty-five years.

Prior to 1976, the defendant had designed the renovation of unused factories and loft space into commercial space in Bridgeport. In the spring of 1976, the two parties met in the defendant's office in New Canaan. During the meeting, the defendant's work in Bridgeport was discussed. The parties became enthusiastic about the potentiality of pub-

licizing the defendant's revitalization efforts in Bridgeport. The two agreed to work together in a two-part program designed to promote Bridgeport: first, by magazine publication, and, second, by an exhibition. The two parties agreed that the defendant would try to raise funds for the proposed project from his sources in Bridgeport.[1]

In August of 1976, the parties met again in the defendant's office. The plaintiff had prepared a letter dated August 17, 1976, which was read in the office, and which began with a description of a two-part proposal concerning (1) a feature on Bridgeport in the December, 1976, "revitalization issue" of Architectural Record and (2) a "revitalization of Bridgeport" exhibit. The letter concluded by stating that the plaintiff's fees and costs for the work would be $15,000. The plaintiff testified that the defendant made no objection to the amounts in the letter, and that the $15,000 was for his photographic work. The defendant testified that he never agreed to any amount for photographic work. This testimony was supported by that of his associates.

Later in August, the plaintiff told the defendant that he needed some money in order to get the pictures and article in the Architectural Record. To ensure that publication, the defendant gave the plaintiff $3500 from his personal funds. In addition, the defendant solicited $2000 from the People's Savings Bank for the project, which sum was matched by the Chamber of Commerce. These monies were paid by the defendant to the plaintiff and, according to the defendant, they represented the portion of the money allocated for the publica-

---

[1] The defendant had been working with the People's Savings Bank in Bridgeport, the Chamber of Commerce, and others.

tion of the article. The article, as planned, was published in 1976. Because additional funds could not be raised, the exhibition never materialized.

In a two-count complaint, the plaintiff brought this action seeking to recover monies from the defendant for work done pursuant to alleged oral agreements between the parties. The first count alleged an oral agreement and sought damages for the reasonable value of services rendered between May and November, 1976. The second count alleged an oral agreement, entered into on or before August 17, 1976, and claimed that the defendant agreed to pay a certain sum for services. The court found in favor of the defendant on both counts; the plaintiff has appealed only from the second count. He raises three claims on appeal, and contends that the trial court erred (1) in allowing the defendant to raise the defense of joint venture for the first time at trial, and in accepting that characterization; (2) in permitting extrinsic parol evidence to contradict the terms of the parties' August 17, 1976 memorandum of agreement; and (3) "in importing certain conditions into the defendant's unconditional obligation to pay, and in holding that the non-occurrence of these conditions released [the] defendant from further liability."

The plaintiff first claims that the court erred in allowing the defendant to raise the defense of joint venture for the first time at trial. Under the circumstances of this case, he contends that, pursuant to Practice Book § 164,[2] the existence of a joint venture must be specially pleaded, which was not done.

---

[2] Practice Book § 164 states in part: "No facts may be proved under either a general or special denial except such as show that

Even assuming that, under the facts of this case, the characterization of the relationship between the parties as a joint venture had to be specially pleaded, and could not have been raised under a general denial, we note that the plaintiff never objected at trial to the introduction of evidence on this issue. We have repeatedly held that "[t]he failure to file a special defense may be treated as waived when it appears that no objection was raised to the offer of evidence on the issue at the trial." *Frager* v. *Pennsylvania General Ins. Co.,* 161 Conn. 472, 479, 289 A.2d 896 (1971); see *Alderman* v. *Hanover Ins. Group,* 155 Conn. 585, 590, 236 A.2d 462 (1967); *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698 (1964); see also *Mainolfi* v. *Brazee,* 135 Conn. 435, 437, 65 A.2d 261 (1949); *O'Donnell* v. *Groton,* 108 Conn. 622, 625, 144 A. 468 (1929). Accordingly, we find no error on this issue.

The plaintiff also claims that even if such evidence were admissible, the court erred in accepting that characterization of the relationship between the parties. The court did not expressly find a joint venture between the parties, but rather concluded that the plaintiff did not meet his burden of proof with regard to his version of the agreement as alleged. This issue is essentially one of credibility.

We have repeatedly held that "nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981), quoting *Steinman* v. *Maier,* 179 Conn. 574, 576,

the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged."

427 A.2d 828 (1980). "The trier is privileged to adopt whatever testimony it reasonably believes to be credible." *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 (1974); *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 424–25, 270 A.2d 546 (1970). We will not reverse the decision of the trial court unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Miller* v. *Appleby,* 183 Conn. 51, 55–56, 438 A.2d 811 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980). Upon review, we find no error in the court's conclusion that the plaintiff failed to meet his burden of proof with respect to his characterization of the agreement between the parties.

Invoking the parol evidence rule, the plaintiff's second contention is that the trial court erred in permitting parol evidence to contradict the clear terms of the August 17, 1976 letter between the parties. He claims that this letter clearly and unambiguously contained all the terms of the agreement between the parties.

Under the parol evidence rule, which is a rule of substantive law rather than a rule of evidence, "if a written contract is found to be the final repository of agreements made between the parties, evidence of a prior unwritten agreement would not be allowed to have any effect on the agreement as integrated in the writing. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885 [1955]; *Jarvis* v. *Cunliffe,* 140 Conn. 297, 299, 99 A.2d 126 [1953]; 3 Corbin, Contracts § 573. . . . Whether the written contract was actually the final repository of the oral agreements and dealings between the parties depends on their intention,

evidence as to which is sought in the conduct and language of the parties and the surrounding circumstances. If the evidence leads to the conclusion that the parties intended the written contracts to contain the whole agreement, evidence of oral agreements is 'excluded,' that is, excluded from consideration in the determination of the rights and obligations of the litigants, even though it is admitted on the issue of their intention. *Cohn* v. *Dunn,* 111 Conn. 342, 346, 149 A. 851 [1930]." *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 254–55, 188 A.2d 493 (1963); *Panaroni* v. *Johnson,* 158 Conn. 92, 106, 256 A.2d 246 (1969); see also Restatement (Second), Contracts § 235 (Tent. Draft 1973); 9 Wigmore, Evidence (3d Ed.) § 2400, p. 3.

"It is well settled that the parol evidence rule does not prevent a party from using contemporaneous or prior negotiations or expressions to show that the writing was never intended to be operative . . . ." Calamari & Perillo, Contracts (2d Ed.) § 3–4, p. 111. Professor Corbin notes that in determining the issue of whether the parties have made a contract, "there is no 'parol evidence rule' to be applied. On [this issue], no relevant evidence, whether parol or otherwise, is excluded." 3 Corbin, Contracts § 573, p. 360. "When the oral testimony goes directly to the question whether there is a written contract or not, it is always competent . . . ." *Smith* v. *Dotterweich,* 200 N.Y. 299, 305, 93 N.E. 985 (1911); see *Arnold Palmer Golf Co.* v. *Fuqua Industries, Inc.,* 541 F.2d 584, 588 (6th Cir. 1976); *C & N Trading Co.* v. *Johnstown Fur Dressing Corporation,* 60 Misc. 2d 1012, 304 N.Y.S.2d 405 (1969).

In the present case, we initially point out that the plaintiff, in his pleadings, relied on the existence of

an oral agreement between the parties as his cause of action. It is also clear that the defendant, by offering parol evidence with regard to the alleged agreement, attempted to show that the letter offered by the plaintiff was not the contract between the parties, and that the terms included in that letter had not been agreed to by him. Clearly, the court committed no error in admitting and considering such evidence.

Finally, the plaintiff claims that the court erred in importing certain conditions into the defendant's obligation to pay, and in finding that since these conditions did not occur, the defendant was released from liability. He specifically contends that the court's conclusion that the plaintiff was not entitled to the full $15,000 unless the exhibit took place was erroneous.

In its memorandum of decision, the trial court was careful to set out the conflicting testimony of the plaintiff and the defendant, and the reasons why it found the defendant's version of the agreement more credible. The court stated that the plaintiff was "surprisingly evasive and uncandid," and that the defendant was "the much more credible witness." Credibility was focal. Based on several factors, including a careful reading of the August 17, 1976[3] letter, the finding that the plaintiff padded his bill "ex post facto in a most patent manner," and the "very impressive testimony" of three former associates of the defendant, the court concluded that the

[3] The court pointed out that the crucial letter of August 17, 1976, shows that if the "proposed 'revitalization of Bridgeport' exhibit" became a reality the other $7500 would be raised by the defendant "probably from his same sources." The exhibit, of course, never became a reality.

defendant's "version of what occurred rings much truer than the Damora version." It accordingly rendered judgment for the defendant.

As discussed above, the trier is the final judge of the credibility of witnesses, and his decision will not be reversed unless it is clearly erroneous. Upon review, we conclude that the trial court's decision was not clearly erroneous.

There is no error.