GEORGE N. SMITH, Respondent, *v.* RUDOLPH DOTTERWEICH, Appellant.

Contract— oral evidence competent to show whether, or not, there is a written contract, but not to contradict or change the contract — when oral proof may be given of conditions annexed to the delivery of a contract — conditions accompanying delivery of note in payment of premium on insurance policy — when evidence thereof admissible.

When oral testimony goes directly to the question whether there is a written contract or not, it is always competent; but when the effect of the oral testimony is to establish the existence of a written contract, which it is designed to contradict or change by parol, then the spoken word must yield to the written compact.

Instruments not under seal may be delivered to the one to whom upon their face they are made payable, or who by their terms is entitled to some interest or benefit under them, upon conditions the observance of which is essential to their validity. And the annexing of such conditions to the delivery is not an oral contradiction of the written obligation, though negotiable, as between the parties to it, or others having notice. It needs a delivery to make the obligation operative at all, and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions with which delivery is made. And so, also, as between the original parties and others having notice, the want of consideration may be shown.

Defendant executed the promissory notes on which this action is brought in renewal of a note which was given in payment of the premium on policies of insurance issued to him through plaintiff. The note was renewed through an insurance broker who had acted on behalf of plaintiff in the first instance. Defendant alleges an oral agreement under which neither the notes nor the insurance policies were to become valid and enforceable obligations unless the plaintiff should secure for the defendant a loan of money upon the policies and certain brewery stock. The loan was never procured, and defendant asked for a return of the notes on tendering back the policies. On the trial plaintiff offered to prove a conversation on the renewal of the note with one of a firm of brokers who acted in the first instance in the negotiation as to the policies. The court refused to admit this evidence and directed a verdict for plaintiff. *Held,* that evidence of what took place on the renewal of the note should have been received. *Held,* further, that the question should have been submitted to the jury whether the insurance policies were accepted by the defendant and the original note was deliv·

ered to the plaintiff upon condition that the same should be returned in case the plaintiff did not within a year produce the loan for the plaintiff with the insurance policies and the brewery stock as collateral.
*Smith* v. *Dotterweich,* 132 App. Div. 489, reversed.

(Argued December 8, 1910; decided January 3, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 13, 1909, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot, Helen Z. M. Rogers* and *Allen J. Hastings* for appellant. The notes in suit were delivered upon a condition precedent which has not been performed. (*Smith* v. *Mussetter,* 58 Minn. 159; *Graham* v. *Remmel,* 76 Ark. 140; *Mendenhall* v. *Ulrich,* 99 Minn. 100; *Andrews & Co.* v. *Hess,* 20 App. Div. 194; *Benton* v. *Marvin,* 52 N. Y. 570; *Bookstaver* v. *Jayne,* 60 N. Y. 146; *Grierson* v. *Mason,* 60 N. Y. 394; *Reynolds* v. *Robinson,* 110 N. Y. 654; *Schmittler* v. *Simon,* 114 N. Y. 176; *Blewitt* v. *Boorum,* 142 N. Y. 357.) The consideration for the notes failed. (*Stewart* v. *U. M. L. Ins. Co.,* 155 N. Y. 257; *Parker* v. *Bond,* 121 Ala. 529.) The exclusion of the evidence of defendant and W. V. Smith as to the conversation with Marvin, plaintiff's agent, at the time the notes were renewed was reversible error. (*Potts* v. *Hart,* 99 N. Y. 168; *Bedell* v. *Bedell,* 37 Hun, 419; *Cramsey* v. *Sterling,* 111 App. Div 576; *Davis* v. *Bemis,* 49 N. Y. 453.) The case should have been submitted to the jury for its determination. (*Strong* v. *R. R. R. Co.,* 121 App. Div. 391; *Higgins* v. *Eagleton,* 155 N. Y. 466; *Sundheimer* v. *City of New York,* 176 N. Y. 495; *Juilliard* v. *Chaffee,* 92 N. Y. 529; *Vosburgh* v. *Diefendorf,* 119 N. Y. 357; *Bank* v. *Diefendorf,* 123 N. Y. 191.)

*William R. Daniels* for respondent. The note was not delivered upon a condition, the performance of which was necessary to give the note life; it was delivered in payment of a life insurance premium for the purpose of giving life to an insurance policy with and upon which the defendant claims he was entitled to a loan from or through the plaintiff. (*J. B. C. Assn.* v. *Allen,* 172 N. Y. 291.) The evidence of the defendant shows that the notes were delivered upon a condition subsequent, and as part of a collateral agreement not in writing; the evidence thus received tending to vary the terms of the contract in writing between the parties, and the court was, therefore, right in directing the verdict for the plaintiff. (*Read* v. *Bank of Attica,* 124 N. Y. 671; *J. B. C. Assn.* v. *Allen,* 172 N. Y. 291; *Trustees* v. *Jessup,* 173 N. Y. 84; *Stowell* v. *G. Ins. Co.,* 163 N. Y. 298; *Eighmie* v. *Taylor,* 98 N. Y. 288; *Englehorn* v. *Reitlinger,* 122 N. Y. 76; *Mead* v. *Dunlevie,* 174 N. Y. 108; *Thomas* v. *Scutt,* 127 N. Y. 133; *McGarrigle* v. *McCosker,* 83 App. Div. 184; *Gray* v. *Meyer,* 88 App. Div. 359.) Conversations had between Larabee and Marvin and this defendant are not admissible as against this plaintiff nor binding upon him and were properly excluded by the court. (*Arff* v. *S. F. Ins. Co.* 125 N. Y. 57; *Devers* v. *M. & T. F. Ins. Co.,* 83 N. Y. 168; *A. M. Co.* v. *Hacker,* 60 Hun, 582; *Constant* v. *University of Rochester,* 133 N. Y. 640.) The evidence construed in the most favorable light to the defendant did not present any question of fact for the determination of the jury, and under the circumstances the direction of a verdict by the court was proper. (*J. B. C. Assn.* v. *Allen,* 172 N. Y. 291.)

WERNER, J. On the 28th day of February, 1901, the defendant executed and delivered to the plaintiff a promissory note for $3,740, payable in six months. When this note became due it was renewed by the four notes in suit which were dated August 28, 1901, and payable in six months from that date. These renewal notes were not paid at maturity, and the plaintiff brought this action upon a complaint in the

usual form. Upon the trial the plaintiff introduced evidence
to show that the original note was given in payment of pre-
miums upon two life insurance policies issued to the defend-
ant by the John Hancock Life Insurance Company through
the plaintiff as its general agent.

The defendant interposed an answer, denying that the
notes were given for value received and that the plaintiff was
the lawful holder and owner thereof, and alleging an oral
agreement under which neither the notes nor the insurance
policies were to become valid and enforceable obligations
unless the plaintiff should secure for the defendant a certain
loan of money. The defendant's testimony in support of
these allegations was to the effect that in February, 1901, he
was visited in Olean by two insurance brokers named Marvin
and Larabee who solicited him to take some life insurance;
that he at first replied that he did not want any; that he
afterwards called Larabee into his private office in the Dotter-
weich Brewery and told him that he had an option to buy
the stock of the brewing company and wanted to raise
$70,000 to pay for it; that if he could get a loan for that
amount on the life insurance and the brewing company's
stock as collateral he would take the insurance; that Larabee
assured him that it could be done and cited instances in which
certain department stores in Buffalo had made loans under
similar conditions. The defendant further testified that a
week later the plaintiff, Larabee and Marvin called; that after
he had been introduced the plaintiff said : "The boys have been
talking, Mr. Larabee and Mr. Marvin have been talking to you
about taking out an insurance for a loan," and I said "Yes."
He says, "Do you want it?" I said, "I do providing you
can make the loan." "And Mr. Smith said that if I would
take out an insurance he could make the loan for me, and that
this company could take at least fifty thousand and he knew
where he could place the other twenty. They even advised
me to split up the policy so that they wouldn't have any trou-
ble making the loan." The defendant further testified that
he met the plaintiff in Olean about ten days later at which time

the latter produced the policies; that he then told the plain-
tiff " that under no consideration could I take out a policy of
that kind without he could guarantee to make me a loan;"
that when the plaintiff handed the original note to the defend-
ant, " I told him there was no use of my signing that note
for a policy at the wages I was getting.  I was getting $75 a
month and I couldn't pay no one hundred thousand dollars
insurance on $75 a month, and he said, ' You sign this note,
and I will hold it in my safe until this deal is closed, and if it
is not closed I return you the note and you return me the
policy.  I will hold this note in my safe and won't try to sell
it.'  He was to loan me seventy thousand dollars at five per
cent for five years or ten and with the privilege of having it
longer.  He said, ' I can get you the seventy thousand dollar
loan and I can get it for you at five per cent for five years
or ten with the privilege of having it longer.'  He said, unless
I would sign the note to show that everything was in good
faith he couldn't make me the loan on the policy.  He said
there wouldn't by any effect in the policy, the policy would
be null and void if he didn't get me the loan, that they would
take the same chance as I."

These are the circumstances in which the defendant says
he executed the original note and delivered it to the plaintiff,
receiving at the same time two policies issued by the John
Hancock Life Insurance Company for $70,000 and $30,000
respectively, together with receipts showing that the premiums
for the first year had been paid.

The defendant sought to show what took place in August,
1901, between Marvin and himself regarding the renewal of
the original note, but the learned trial court excluded the
proffered evidence upon the ground that Marvin's declarations
and admissions could not bind the plaintiff, as there was no
proof that Marvin had authority to do anything except to get
an unconditional renewal.  Then the defendant further testi-
fied that the plaintiff never procured the loan for him; that
soon after the notes in suit became due, and before this action
was commenced, he went to the plaintiff's office in Buffalo,

and asked for a return of the notes and tendered back the policies.

When the defendant rested his case the learned trial court granted the plaintiff's motion for the direction of a verdict and to this ruling the defendant duly excepted.   The defendant also asked the court to submit to the jury the question whether the insurance policies were accepted by the defendant and the original note was delivered to the plaintiff, upon condition that the same should be returned in case the plaintiff did not within a year procure a loan of $70,000 for the plaintiff with the insurance policies and the brewery stock as collateral.   This motion was also denied and the defendant took an exception.

We have quoted or cited only such parts of the evidence as bear directly upon the question whether the learned trial court erred in directing a verdict for the plaintiff.   The case is characterized by a number of peculiarities which may, or may not, be influential in determining the ultimate result, but with these we have no present concern.   The question now before us is whether the testimony of the defendant, supplemented by such legitimate inferences therefrom as are most favorable to him, is of sufficient weight and probative force to create a question of fact for the jury; and that question obviously depends upon the nature and effect of the oral agreement to which he testified.   If that agreement, which for present purposes must be assumed to have been made, created a condition precedent, without the performance of which the notes never became valid obligations in favor of the plaintiff, then there is a question of fact for the arbitrament of a jury.   The converse of the proposition is equally simple. If the effect of that agreement was to engraft upon a valid contract a condition subsequent, the learned trial justice was right in ruling that the issue was one of law for his decision. A careful analysis of the defendant's testimony has convinced us that he is right in the contention that the case should have been sent to the jury.   He testified that he told the plaintiff that under no consideration would he take the insurance

unless the plaintiff would guarantee to make him the loan; that the plaintiff told him to sign the note which would be held in the plaintiff's safe until the deal was closed; that if it was not closed the note would be returned to the defendant and the policy would be returned to the plaintiff; that the policy would be null and void if the plaintiff did not get the loan for the defendant and that both of them would be taking the same chance. If these statements mean anything, they plainly import a condition which was to be performed before the transaction, witnessed by the delivery of the note to the plaintiff and the delivery of the policies and receipts to the defendant, was to be regarded as consummated and binding. That condition was the procurement of the loan which, concededly, was never made. Giving to the defendant's story a fair, natural and unstrained interpretation, we have a case in which there is a failure of the precise condition which must determine the existence or non-existence of any contract between him and the plaintiff. We are not unmindful of the opposing facts and antagonistic inferences which other features of the transaction may suggest. These are not proper subjects for present discussion. We simply emphasize the controlling circumstance that if the defendant's story is true, there is no binding contract between him and the plaintiff, and the issue of its truth or falsity is for the jury and not for the court.

There is no subtlety or ambiguity in the law of the subject, but there is difficulty in applying it to some cases in which there may be uncertainty as to the effect of oral testimony upon contracts which are wholly or partly reduced to writing. When the oral testimony goes directly to the question whether there is a written contract or not, it is always competent; but when the effect of the oral testimony is to establish the existence of a written contract, which it is designed to contradict or change by parol, then the spoken word must yield to the written compact.

There are many decided cases upon this branch of the law both in this state and in other jurisdictions, but we shall refer

to only a few as illustrating the line of cleavage between the case at bar and the case of *Jamestown Business College Assn.* v. *Allen* (172 N. Y. 291), upon which the respondent relies to support his contentions.

In *Benton* v. *Martin* (52 N. Y. 570) this court very clearly enunciated the rule, which has always obtained in this state, " Instruments not under seal may be delivered to the one to whom upon their face they are made payable, or who by their terms is entitled to some interest or benefit under them, upon conditions the observance of which is essential to their validity. And the annexing of such conditions to the delivery is not an oral contradiction of the written obligation, though negotiable, as between the parties to it, or others having notice, It needs a delivery to make the obligation operative at all. and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions with which delivery is made. And so also, as between the original parties and others having notice, the want of consideration may be shown." (p. 574.) This quotation sums up the whole of the law applicable to the case at bar in its present state, and outlines comprehensively the rule which has been followed in *Bookstaver* v. *Jayne* (60 N. Y. 146); *Grierson* v. *Mason* (60 N. Y. 394); *Reynolds* v. *Robinson* (110 N. Y. 654); *Schmittler* v. *Simon* (114 N. Y. 176), and other cases, under a variety of circumstances.

The case of *Jamestown Business College Assn.* v. *Allen* (*supra*) is a salient illustration of the converse of this rule. There the promissory note was rendered effective and complete by an unconditional delivery. The payee agreed to release the maker, and to cancel the note, upon a future contingency which might or might not arise. That was clearly a condition subsequent which brought the case within the general rule that a contract reduced to writing and complete in its terms, cannot be varied and contradicted by oral testimony. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Thomas* v. *Scutt*, 127 N. Y. 133; *Stowell* v. *Greenwich Ins. Co.*, 163 N. Y. 298; *Mead* v. *Dunlevie*, 174 N. Y. 108.) Thus, to state the difference

most concretely, the case at bar is one in which the oral testimony tends to show that the writing purporting to be a contract is in fact no contract at all, while in the case of the Jamestown Business College the oral testimony was in direct contradiction of the written contract as to the existence and validity of which there was no controversy.

We think the court erred in excluding the evidence offered by the defendant to show what took place between him and Marvin at the time when the original note was renewed by the notes in suit. It needs no argument to demonstrate that if it was competent for the defendant to show under what conditions he delivered the original note, he must logically be permitted to show that the renewal notes were affected by the same conditions. Quite aside from this there is enough in the record to make it a question for the jury whether Marvin was or was not the *alter ego* of the plaintiff in the dealings with the defendant.

As there must be another trial, we have eliminated from this discussion everything that is not germane to the questions which are before us on this appeal. We have not referred to the defendant's counterclaim, which is manifestly inconsistent with his defense, or to the evidence relating to his asserted possession of options for the purchase of the brewery stock. These and various other features of the case may be of importance in determining the verdict of a jury, but they cannot affect our decision.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.