(74 Misc. Rep. 246.)

### CARNEGIE TRUST CO. v. RUDOLPH KLEYBOLTE & CO.

(Supreme Court, Trial Term, New York County.   November, 1911.)

1. EVIDENCE (§ 420*)—PAROL EVIDENCE—VARYING TERMS OF INSTRUMENT.
   Evidence of an oral agreement on delivery of a note that payment by the makers should be dependent on their ability to realize funds from the sale of bonds is inadmissible as tending to vary the terms of the written instrument.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944; Dec. Dig. § 420.*]

2. BILLS AND NOTES (§ 142*)—ACTIONS—DEFENSES.
   Though the holder of a renewal note has not surrendered the original note, he may maintain an action on the renewal note on bringing the original into court and offering to give it up; no rights of third parties being involved.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 352, 353; Dec. Dig. § 142.*]

Action by the Carnegie Trust Company against Rudolph Kleybolte & Co.   Motion to set aside verdict rendered against defendants by direction of court.   Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

White & Case (Joseph M. Hartfield, of counsel), for plaintiff.

Anderson & Anderson (Nash Rockwood, of counsel), for defendants.

GREENBAUM, J.   Motion by defendants Rudolph Kleybolte & Co. to set aside the verdict of a jury rendered against them by direction of the court.   The action was brought to recover the sum of $137,955.35, the balance alleged to be due upon a promissory note for $375,000 made by Rudolph Kleybolte & Co. to the order of the Carnegie Trust Company.   The circumstances under which this note was executed, as detailed by the defendants and their witnesses, may be briefly stated as follows:   On March 9, 1908, the date upon which a note of a corporation known as the Fidelity Funding Company, held by the Carnegie Trust Company, matured, a conference was held at the office of the trust company between one Dickinson, the president of the trust company, now deceased, the defendant Kleybolte, and one Kieran, the president of the Fidelity Funding Company.   As a result of this meeting, the defendants Rudolph Kleybolte & Co. executed a collateral form of promissory note to the trust company for $375,000.   It recited that said Rudolph Kleybolte & Co. deposited as collateral security for the payment of the note, bonds of the Fidelity Funding Company of the par value of $464,000.   On the same day a check for $375,000 was deposited by the Carnegie Trust Company to the credit of the account of Rudolph Kleybolte & Co. with said bank, and subsequently a check was drawn by the said firm of Kleybolte & Co. for $375,000 against said account to the order of the Fidelity Funding Company.   The account of the Fidelity Funding Company was thereafter credited by the trust company with the sum of $375,-000, and the bonds were transferred to Kleybolte & Co. by the Fidelity Funding Company under a written agreement.   The note of March 8th was not paid on the date of its maturity, May 8, 1908, and a renewal note being the one in suit for $375,000 was thereafter made by Rudolph Kleybolte & Co. to the order of the plaintiff.

The defendants claim that the original note of March 8th was executed and delivered to the trust company as an accommodation to it and upon the understanding that they were not to be held liable upon the note and were not to be expected to pay it, but that all the defendants were to do was to "go out and sell" the bonds of the Fidelity Funding Company, to wit, the collateral in question.   To quote from the testimony of Kleybolte:

"We are not to pay the note or any renewals thereof unless by the sale of these bonds—that is, we are to have all the time we want to sell these bonds from time to time—and he (Dickinson) would carry the bonds until they would be placed into shape for sale and until sold."

Mr. Kieran, called as a witness by the defendants, testified as follows:

"Mr. Dickinson said to Mr. Kleybolte, after they came to the office, 'I understand you are buying these bonds from the Fidelity Funding Company;' and he said 'Yes.' 'What is the price?' He said '87½.' He said: 'So I understand it.' And he said: 'Well, has Kieran spoken to you about giving this note?' He said: 'Yes, he has; but,' he says, 'you understand, Mr. Dickinson, I couldn't pay that note when it would mature unless the bonds were sold.' He said: 'Of course, we don't want to give the note, but, if it is an accom-

modation to you people, we will give it with the understanding that we will carry it until such time as the bonds are sold.' Mr. Dickinson said: 'We are simply taking the note in order to reduce, as far as the banking department is concerned, the Fidelity Funding Company and Kieran's personal indebtedness to this bank.' And he said: 'We will also help you to dispose of the bonds in any possible way that we can.' That was the general substance of the conversation."

And again:

"Mr. Kleybolte raised one objection which Mr. Dickinson agreed to, and that was as to the bonds, the interest would have to be increased, and that he would possibly have to put the bonds up and issue collateral trust notes as against them, and Dickinson agreed to have that done if it was necessary."

Mr. Kleybolte also testified as follows:

"I says that I am in no position to pay any loan of this kind, but the only way that I could work out this situation is to use my abilities and my good faith and hard work in going out and selling these bonds."

Assuming, as we must upon a motion for a direction, that the transaction occurred as testified to by Kleybolte and his witness Kieran, it is evident that this note may not be treated as an accommodation to the Carnegie Trust Company, unless its purpose was to deceive the state banking examiners by fraudulently splitting up the indebtedness of upwards of $700,000 of the Fidelity Funding Company into two notes, one to be made by the defendants for $375,000 and the other for the balance by the Fidelity Company, the real debtor, and the legal effect of the transaction would make it an accommodation note, executed for its benefit. There is no allegation of a fraudulent scheme to deceive the banking examiners. But, even if such a deception be assumed, the defendants were necessarily parties thereto, and would not be permitted to plead their own wrongdoing as a defense to the note. It was entirely proper for the trust company to insist upon the reduction of the Fidelity Funding Company loan, and, under the circumstances detailed, it cannot be successfully urged that the note was given without consideration.

[1] The principal defense, however, relied upon is that the conditions under which the note was executed and delivered defeat a recovery. The rules controlling the disposition of this defense are succinctly stated in Jamestown Business College v. Allen, 172 N. Y. 291, 64 N. E. 952, 92 Am. St. Rep. 740, and Smith v. Dotterweich, 200 N. Y. 299, 93 N. E. 985, 33 L. R. A. (N. S.) 892. The Jamestown Case is an illustration of a condition subsequent and the Dotterweich Case of a condition precedent. In the case at bar there can be no question, but that the delivery of the note was unconditional, and that it was founded upon a valuable consideration. Defendants seek to avoid payment of a completely delivered note upon the ground that it was orally agreed that payment of the note was to be dependent upon their ability to realize upon the sale of the bonds in question. This would clearly be the case of a condition subsequent. It is undisputed that the defendants were bondbrokers, whose business it was to buy and sell bonds on their own account, and whose practice it was to borrow from banks upon the deposit as collateral of the bonds in which they were dealing. The defendants assert that they did not actually buy the bonds in question, but merely went through the form

of purchasing them for the·purpose of making the note in suit. But the admitted fact is that the defendants were deeply interested in the sale of the bonds, upon which they stated they were to receive commissions, and that they agreed to pay the note out of the proceeds realized from the sale of the bonds. We have thus the case of a valid contract the obligations of which the defendants seek to overthrow by oral testimony in contradiction of the terms of the note. This cannot be done.

[2] I cannot agree with the further contention that the plaintiff in no event may maintain this action upon the note of May 8th because of its failure to surrender the prior original note of March 8th. The plaintiff tendered the defendants the note of March 8th in open court upon the trial, and, while a creditor may doubtless sue upon the original demand and bring the extension note into court to be given up on the trial (Jagger Iron Co. v. Walker, 76 N. Y. 521, 524), I do not understand the rule to be that the holder of a renewal note is precluded from suing thereon because of his failure to surrender the original note, where, as here, he brings the original note into court and offers to give it up and where no rights of third parties·are involved. In Gansevoort Bank v. Gilday, 53 Misc.˙ Rep. 107, 104 N. Y. Supp. 271, cited by defendants, it does not appear that the plaintiff surrendered or offered to surrender the prior notes. In my judgment the verdict was properly directed against the defendants.

Motion to set aside verdict denied.