MERCHANTS NATIONAL BANK OF PLATTSBURGH, NEW YORK, Respondent, *v.* R. PRESCOTT & SON, INC., Appellant.

Third Department, March 29, 1929.

*Pierce & Holcombe* [*Wallace E. Pierce, Thomas F. Conway, Thomas E. O'Brien* and *William F. Pritchard* of counsel], for the appellant.

*Feinberg & Jerry* [*Benjamin F. Feinberg* and *Harold A. Jerry* of counsel], for the respondent.

HILL, J. Defendant is a corporation engaged in the manufacture of furniture. A summary judgment for $45,000 with interest has been entered in favor of the plaintiff against the defendant upon an order made at Special Term under rules 113 and 114 of the Rules of Civil Practice. The complaint contains three causes of action, the first to recover upon a promissory note for $20,000 of which defendant is maker, payable to its own order and by it indorsed. The second cause of action is upon a note

of like amount with the same maker, payee and indorser. The third cause of action is upon a note for $10,000 with the same maker, payee and indorser upon which a payment of $5,000 is admitted. The answer contains four affirmative defenses. Three of these are stated to be complete, the fourth partial. The first is that while in form the defendant is the maker of each of the notes in fact the notes were delivered to plaintiff with notice that John W. Guibord and his associates Potter, Levy and others, were primary obligors. In the affidavits presented by defendant in support of this defense and in opposition to the motion for summary judgment the only fact stated which might raise this issue is that said John W. Guibord was vice-president and a member of the discount committee of plaintiff; and that he with defendant's officers together with Levy, Potter and others contemplated the promotion of a new corporation designed to take over the assets of the defendant including their plant which it was planned should be enlarged. The promotion project was adjourned or abandoned and an agreement was made between the above-mentioned coadventurers that funds to enlarge defendant's business should be obtained by negotiating notes of which these in suit are a part; that an agreement was made between the coadventurers that while defendant in form would make and indorse the notes, Guibord, Levy, Potter and others, who had contemplated the promotion, would in fact be primarily liable; that as Guibord, the official of plaintiff, knew this fact, notice to plaintiff as to the identity of the real makers of the notes is to be inferred. The affidavits show that the proceeds of these notes were received by defendant and used by it in its manufacturing business. The merchandise manufactured from these funds was sold by defendant for its own benefit. Defendant was an indorser as well as a maker and if we assume that John W. Guibord and his associates were primarily liable as the defendant claims, yet defendant is secondarily liable. When these notes were delivered they were all indorsed by defendant and some by defendant's officers. Their affidavits disclose an unwillingness to indorse in their personal capacity more than they considered and say they had agreed was their proportionate share. Thus they understood that the indorsements obligated the indorsers. There had been a delivery of the notes to plaintiff, it had parted with full face value and defendant had received the entire benefit therefrom. Thus there was a completed contract with only a claim of notice to plaintiff of primary obligation on another than the maker. Defendant's officers recognized that the indorsement created a liability. No arguable defense is presented by this branch of the answer. (*Grannis* v. *Stevens*, 216 N. Y. 583.)

The facts alleged under the second and third defenses raise no issue. The fourth partial defense applies to $20,000 of the notes. These had been originally negotiated at the Manufacturers National Bank of Troy by the defendant or its business associates, or had been after negotiation with plaintiff rediscounted at the Troy bank. At maturity of these notes on November 10, 1926, Levy in form an indorser paid the amount to the Troy bank, and thereafter pledged the notes maturing on the day of such payment with the plaintiff as collateral security for a portion of the money he used for the payment and as collateral for other indebtedness owing by him to the plaintiff. Thereafter plaintiff's cashier procured renewals of these notes from defendant's officers without disclosing the fact of payment, and in the absence of Levy substituted these renewals in place of the notes which Levy had pledged. If notice to John W. Guibord, plaintiff's official, is notice to the plaintiff that Levy was in fact the maker, then an issue is raised by this defense as to the $20,000 of notes, for if it should be determined on the trial that Levy was in fact the maker and primarily obligated thereon and that plaintiff had knowledge thereof, the payment to the Troy bank was in full satisfaction of the notes. Of course if defendant was the maker and Levy the indorser as the form of the notes indicate, he became the owner and could renegotiate them.

The judgment should be modified to allow judgment to the amount of $25,000, with interest thereon from March 31, 1926, and as to the remainder reversed, without costs, and a new trial granted.

Van Kirk, P. J., and Whitmyer, J., concur; Davis, J., dissents from so much of the decision as affirms a part of the judgment, and favors a reversal of the entire judgment, with an opinion in which Hasbrouck, J., concurs.

Davis, J. (dissenting). It is difficult to discover and condense the theory of the defense contained in the ninety-six pages of affidavits by defendant's officers and the one hundred page briefs of its counsel. We have heretofore in this same case expressed our opinion of such redundancy (223 App. Div. 194). The rule applies alike to motion papers and pleadings. (*Allen* v. *Fink*, 211 App. Div. 411, 413.) It is better to state simple facts in a plain and concise manner, rather than by long, turbid repetitions. It makes the work of the court more easy; and there is less likelihood that something of importance may be overlooked.

As I understand the defenses, the first, third and fourth are based on the claim that there was delivery of the original notes on the condition that the maker executed them solely for the

accommodation of the promoters of a new corporation and to facilitate their purposes in capitalizing it; and that it was agreed that the maker should not under any circumstances be liable thereon. The promoters, consisting of John W. Guibord and his associates, not only obtained the notes and negotiated them, but several of them assumed liability of some nature by becoming indorsers. The defendant is prepared to show that the obligation these men assumed was primary. It is, therefore, a good defense against the persons for whose accommodation the notes were made and so conditionally delivered, and also against any person who became a holder with notice of the conditions. (*Smith* v. *Dotterweich*, 200 N. Y. 299; *Niblock* v. *Sprague*, Id. 390; *Higgins* v. *Ridgway*, 153 id. 130; *Garfield National Bank* v. *Colwell*, 57 Hun, 169.) On the former appeal we held that it was possible to set up such valid defenses in the answer (223 App. Div. 194). I think they have now been stated.

Notice to the bank may be established not only by the fact that its vice-president and member of its discount committee, John W. Guibord, indorsed and negotiated the notes and was a party to the conditional delivery; but by other significant facts and circumstances from which the inference of notice may be drawn. (*Title Guarantee & Trust Co.* v. *Pam*, 232 N. Y. 441; *Wittemann* v. *Sands*, 238 id. 434.) The transaction between the defendant corporation and the promoters was an agreement to sell its business to a corporation to be formed. I do not regard the defendant as a coadventurer with the promoters — at least as a matter of law. The defendant apparently received the avails of the notes not on its own account, but as a holder for the promoters who, as it is claimed, became primarily liable thereon. No one here seriously denies that there was an agreement by the promoters to purchase the business of the defendant, and that the sum so raised on the notes was a contribution to the working capital of the projected new corporation — to be held temporarily by the defendant. Assuming a sale to the promoters of the new enterprise, and an agreement by them to become primarily liable on the notes, the theory that the avails were to be paid to defendant in its own interest although the promoters were to pay the notes, requires the exercise of a vivid constructive imagination and the recognition of unusually generous impulses on the part of experienced business men engaged in organizing a new corporation. Yet that highly charitable theory is necessary to hold that the defendant was a coadventurer and the maker of the notes, and consequently liable because " it had the money." The only question here, as I see it, is that of notice to plaintiff.

The second defense is one of fraud in the inception of the notes with notice of such infirmity to plaintiff before it became a holder. The appellant's theory in this respect seems fanciful; but as I favor reversal of the judgment on other grounds I think it would not be prejudicial to respondent to permit the defendant to develop its theory on the trial. It might produce results. (*Title Guarantee & Trust Co.* v. *Pam, supra.*)

I do not disagree with what is said in the opinion of Mr. Justice HILL on the subject of payment, but I favor reversal of the entire judgment.

HASBROUCK, J., concurs.

The judgment is modified by adjudging that the plaintiff shall recover of the defendant the sum of $25,000, with interest thereon from March 31, 1926, and the remainder of the judgment is reversed on the law, without costs, and a new trial granted.