[File No. 5881.]

DUNCAN RULE, Doing Business under the Firm Name and Style of Northwest Funding Company, Appellant, v. DONALD P. CONNEALY, Respondent.

(237 N. W. 197.)

58

Opinion filed May 27, 1931.

*Thomas C. Jepsen* and *T. S. Stuart,* for appellant.

*E. A. Tannas,* for respondent.

BIRDZELL, J. The plaintiff brought action against the defendant upon a promissory note for $148, payable in installments beginning approximately five months after the date of the note. The plaintiff had judgment in justice court. The defendant appealed to the district court where the case was tried to a jury, and from a judgment entered in favor of the defendant upon the verdict of the jury the plaintiff appeals to this court. To the complaint, which alleges merely the execution of the note, its ownership by the plaintiff and the default of the defendant, the defendant answered alleging that on or about the 8th of May, 1929, he entered into a conditional agreement with the Northwest Funding Company for enrollment in the American Extension University of Los Angeles, California, for which if he elected not to cancel the agreement prior to the first of October he was to pay the sum of $148, paying $48 on October 1st as a cash payment and the balance at $20 per month. He likewise pleads that he availed himself of his right to cancel the conditional contract before October 1st and consequent lack of consideration for the note.

It appears that one Duncan Rule solicited the defendant to enroll in the American Extension University of Los Angeles, California, for the purpose of taking a law course. A contract was produced by Rule in which the name of the American Extension University in large letters is printed at the top. There also appears at the heading of the paper these statements: "Complete Law Course $198 Scholarship $50 Enrollment Certificate $148." Immediately beneath this there is a printed form of letter addressed to the Northwest Funding Company, Spokane, Washington, with a signature blank to be filled by the person desiring to enroll. (Rule testified that he was the Northwest Funding Company.) This letter expresses the purpose of the prospective student to improve his education through the purchase of an enrollment

certificate issued by the American Extension University. It recites the obligation of the student to pay the agreed value, $148, regardless of what he does with the lessons of the law course, and purports to state "guaranties" that are covered by the enrollment certificate. Just how one is to improve his education by the purchase of an enrollment certificate is not made apparent, but from the terms of the "guaranties" recited it is obvious that the student has in reality agreed to pay for the lessons that are to be supplied to him and for the other work in connection with the giving of instruction in the contemplated subjects. Beneath this agreement the paper is perforated and below the perforation is printed the terms of a promissory note which was likewise signed by the defendant and dated the same date as the letter or agreement. This note contains the stipulation that there are no terms or conditions other than such as appear thereon in print or writing. The defendant, by letter dated September 26, 1929, notified the Northwest Funding Company that he would be unable to take the course and therefore canceled the contract. Over the objection that his testimony was incompetent as contradicting and varying a written contract, the defendant testified to the effect that when approached on the subject in May he declined to enter into any arrangement, stating that he could not under· take any such work before fall and that he was uncertain as to whether he would then be able to do so; that thereupon Rule explained that he made the territory but once a year, that he could not come back in the fall, that his offer of a fifty-dollar scholarship would not be good for so long and that if he, the defendant, would sign up then the contract would take effect the first of October; that if the defendant decided not to take the course it could be canceled before the first of October,· and that he would hold the papers until that time. Whether or not this evidence was properly admitted and whether the defense which it tends to establish was available to the defendant, furnish the only questions for decision on this appeal.

Section 16 of the Negotiable Instruments Act (§ 6901 of the Compiled Laws of 1913) provides that every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto and that as between the immediate parties the delivery may be shown to have been conditional or for

a special purpose and not for the purpose of transferring the property in the instrument.

It is obvious that a negotiable instrument may pass from the hands of the maker to the payee in circumstances which negative an intention that it shall immediately take effect as an obligation. The statute does not prevent parties whose negotiations have reached the point where one is an apparent maker of an instrument and the other a payee from showing that the transaction was nevertheless inchoate or incomplete. If an instrument be delivered to evidence a subsisting debt, it, of course, takes effect as of the time of its delivery; but if, on the other hand, the instrument be delivered for the purpose of expressing the obligation of the maker under a proposed contract which lacks final assent by one of the parties and with the understanding that it is not to be effective unless such final assent is ultimately given, the instrument may not be said to have been delivered for the purpose of giving effect thereto as evidence of a subsisting debt. In other words, if the instrument be merely executed and manually delivered to subserve the convenience of parties while their contractual intention is equivocal, such delivery is not one for the purpose of giving effect to the instrument and the true understanding with which the payee received it may be shown.

The provision of the Negotiable Instruments Law above quoted recognizes the legal necessity of first identifying the transaction in connection with which the instrument was given before attempting to apply the parol evidence rule. It recognizes that the rule cannot be successfully invoked until it shall appear that the instrument was made and delivered as an expression of the obligation of the parties who purport to be bound. There is, of course, a presumption arising from the mere circumstance of delivery, but this is declared to be rebuttable as between the immediate parties, and where the evidence identifying the transaction with which the note is connected shows that no contract has resulted on account of one or both of the parties remaining free to give or withhold his assent to a proposal, the note is just as incomplete as the contract. It then appears, within the contemplation of the statute, that the delivery of the note to the payee was not for the purpose of transferring property in it as an obligation; and from this it would follow that the instrument, though in the hands of the payee, is not within the protection of the parol evidence rule.

In the instant case it is clear from the evidence showing the transaction out of which the alleged note arose that the defendant had not finally yielded his assent to the terms of the plaintiff's proposal. He in effect said that if he should finally elect by October 1st to avail himself of the services offered by the plaintiff the contract and note should express his obligation, but that if he determined not to accept the services there should be no contract.

It is sometimes difficult to distinguish between a situation in which the parties have agreed upon the terms of a contract and rendered the performance of it subject to a condition subsequent, upon the happening of which either or both of the parties may disavow the obligation, and a situation wherein the terms of a proposed contract are agreed upon subject only to final assent. But it would seem that where the proposed contract embraces mutual promises to be performed in the future and where performance on both sides is postponed until a future date, as in the case at bar, and where until such date arrives one of the parties has reserved the right, subject to no limitation or condition whatsoever, of determining whether he shall be bound, there is in fact no contract until final assent is yielded. Where such is the substance of the understanding of the parties, it matters little whether it is expressed in the form of a condition subsequent rather than a condition precedent to the contract becoming effective. Any agreement which one party reserves the right to cancel at his pleasure does not create a contract. Velie Motor Car Co. v. Kopmeier Motor Car Co. 114 C. C. A. 284, 194 Fed. 324; Williston, Contr. § 105.

A situation strongly analogous to that of the instant case was presented in Watkins v. Bowers, 119 Mass. 383. There the defendant was solicited by the general agent of an insurance company to take a policy and it was agreed that he should have sixty days to determine whether or not he would be insured and that if within that time he should decide not to be insured and should so notify the plaintiff the policy would be taken back and the note returned to the defendant. With this understanding an application was signed and a note representing the premium delivered. Later the policy was issued, but the prospective policyholder determined not to accept the insurance. Concerning the obligations resulting from this transaction the supreme

judicial court of Massachusetts, speaking through Colt, J., said (page 387 of 119 Mass.):

"In the case at bar the note in suit had no binding force until delivered as evidence of a subsisting debt, and none if made without consideration. The consideration necessary to its validity depended on whether the contract of insurance was so completed between both parties that the policy attached and the company became liable under it temporarily or permanently."

The jury found there was no completed contract of insurance and the court affirmed a judgment for the defendant, further saying: "The fact that the policy was left at the defendant's house and retained by him would be evidence bearing on the question of its delivery and acceptance, but not conclusive, and all the circumstances are to be considered by the jury."

Another somewhat analogous case is Union Invest. Co. v. Epley, 164 Wis. 438, 160 N. W. 175. This was a suit upon a note given in connection with a transaction whereby the maker, at his later election, was to become the purchaser of certificates of stock. If he decided to purchase, the note was to become binding; but if not it was to be returned to him and be of no force. It was held that the payee had possession of the note knowing that it was incomplete and revocable until the defendant elected to purchase the stock. See additional authorities in 18 L.R.A.(N.S.) 288, note, and L.R.A.1917C, p. 306, note; Brannan, Neg. Inst. Law, 4th ed. p. 136. See apparently contra Jamestown Business College Asso. v. Allen, 172 N. Y. 291, 92 Am. St. Rep. 740, 64 N. E. 952. But see Smith v. Dotterweich, 200 N. Y. 299, 33 L.R.A.(N.S.) 892, 93 N. E. 985.

In the later of the two New York cases above cited the defendant who had given a promissory note for a life insurance premium defended an action thereon by setting up a verbal understanding to the effect that he was not to take the insurance and pay the note unless the general agent of the insurance company would procure a definite, substantial loan on the policy. The testimony offered in support of the agreement was that the plaintiff had said to the defendant that unless he would sign the note to show that everything was in good faith he (the plaintiff) could not make the loan on the policy; that the plaintiff said there wouldn't be any effect in the policy and that it would be null and

void if he didn't get the loan and that he would hold the note in his safe until the deal was closed and if it was not closed he would return the note to the defendant and the defendant would return the policy. In the opinion which was prepared by Werner, J., who had likewise prepared the prevailing opinion in the Jamestown Business College Asso. Case, 172 N. Y. 291, 92 Am. St. Rep. 740, 64 N. E. 952, supra, this distinction is taken (200 N. Y. 299, 306, 33 L.R.A.(N.S.) 892, 895, 93 N. E. 985, 987):

"Thus, to state the difference most concretely, the case at bar is one in which the oral testimony tends to show that the writing purporting to be a contract is in fact no contract at all; while in the case of the Jamestown Business College the oral testimony was in direct contradiction of the written contract, as to the existence and validity of which there was no controversy."

We are of the opinion that the evidence in this case tends reasonably to show that the note was delivered upon condition that if the maker later determined to accept the proferred services of the correspondence school it would then represent his obligation to pay for such service and until he did definitely so determine there was no contract binding him to accept any pay for such services. Meanwhile there was no delivery of the note as a subsisting obligation.

The appellant relies upon the following stipulation in the note: "There are no terms or conditions other than hereon in print or writing." Obviously, this stipulation can have no effect until the writing of which it is a part is delivered for the purpose of taking effect as a contract. Furthermore, it may well be doubted whether the plaintiff is entitled to invoke this stipulation, in view of the fact that by separating the note from the letter or contract to which it was attached he had altered the note in a vital particular relating to the inclusion of contemporaneous matter. At the time the note was signed this stipulation referred to the entire contract—that which was expressed above the perforation as well as that which was below it. Therefore, when later the note was separated from the portion above it the stipulation printed in the note would exclude terms which were a part of the writing when signed. To give to the stipulation the effect, then, of excluding all terms or conditions not printed or written in the note would be to enforce against the defendant a contract different from that which he

signed. The plaintiff, after so altering the defendant's writing, is hardly in a position to assert that the defendant bound himself irrevocably to pay $148 for a so-called enrollment certificate.

The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and BURR, JJ., concur.