38 N.Y.2d 493 (1976)
Long Island Trust Company, Respondent,
v.
International Institute for Packaging Education, Ltd., et al., Defendants, and Marty Rochman et al., Appellants.
Court of Appeals of the State of New York.
Argued October 17, 1975.
Decided January 8, 1976.
Earle K. Moore and William M. Guttman for appellants.
C. Gayden Wren for respondent.
Judges GABRIELLI, WACHTLER and COOKE concur with Judge JASEN; Chief Judge BREITEL dissents and votes to affirm in a separate opinion in which Judges JONES and FUCHSBERG concur.
*494 JASEN, J.
In this action on a promissory note, the question presented for our review is whether the appellants, individual guarantors of a corporate obligation, may interpose as a defense on the guarantee an alleged oral agreement that the guarantee would not become effective until the payee procured the guarantee of other specific persons as coguarantors. On this motion for summary judgment, plaintiff bank, the holder of the note and the one in whose favor the guarantee ran, argues that the appellants produced no evidence which, if *495 fully accepted, would establish conditional delivery of the endorsed note in suit, but, in any event, asserts that the defense of conditional delivery is not available, as a matter of law, to the appellants.
Special Term granted the bank summary judgment on the grounds that the alleged conditional statement was insufficient notice to the bank and that even if it were sufficient notice, "public policy estops the defendants from showing that a note made payable and delivered to a bank was not to be enforced unless there was compliance with certain oral conditions". The Appellate Division, two Justices dissenting, affirmed.
On March 4, 1970, the bank loaned to defendant International Institute for Packaging Education, Ltd., $25,000 for a period of 90 days. A promissory note delivered to the bank for this loan was endorsed by five guarantors, Raymond D'Onofrio, defendants James W. Feeney and Robert Goldberg, and appellants Marty Rochman and Sidney Horowitz. At the time of the making of the loan, Rochman claims that he discussed with George Dean, an officer of the bank, the conditions upon which he would endorse the note and procure Horowitz' endorsement. It was agreed, claims Rochman, that the note would be endorsed by the five afore-mentioned persons and that any renewal of the note would also require the endorsement of the same five individuals. On June 2, 1970, the bank agreed to renew the loan for another 30 days and to loan an additional $10,000. Rochman delivered a new note, which he and Horowitz had both endorsed, to William Lambui, an officer of the bank, and allegedly told him "to make sure that all the endorsements were on the Note." Although the note was also endorsed by Feeney and Goldberg, D'Onofrio never endorsed it.[1] Nevertheless, the bank extended the loan for 30 *496 days and advanced to the International Institute the additional $10,000. When the loan was not repaid, the bank instituted this action against International Institute and the four guarantors, Rochman, Horowitz, Feeney and Goldberg.
On this appeal Horowitz and Rochman contend that, by virtue of the agreement they made with bank officer Dean, their delivery of the June 2 note was conditional upon the procurement of the endorsement by D'Onofrio, and that, since this endorsement was not obtained by the bank, the note is unenforceable as to them. As we view it, this case involves the questions of whether Horowitz and Rochman may attempt to prove such an agreement by resort to parol evidence, and, if so, whether this agreement, if proved, would bar enforcement of the note as to them. Since we would answer both questions affirmatively, we would reverse the order of the Appellate Division and deny the motion for summary judgment.
A person who is not a holder in due course takes an instrument subject to the defense of nonperformance of a condition precedent (Uniform Commercial Code, § 3-306, subd [c]). Conditional delivery is one such defense in the nature of a condition precedent (Uniform Commercial Code, § 3-305, official comment 3; § 3-306, official comment 4). Even before the enactment of the code, it had long been the rule that where the terms of the conditional delivery have not been complied with, the instrument is unenforceable and parol evidence is admissible to show that the delivery of the instrument to the payee was a conditional delivery (Smith v Dotterweich, 200 N.Y. 299, 305-306; Saypol v McLaughlin, 274 App Div 1052, affd 299 N.Y. 750). Among the conditions precedent which may be proved by parol evidence is that the instrument was not to take effect until the payee had procured other signatures (Baruch v Buckley, 167 App Div 113; Ann., 20 ALR 421, 440-442; Ann., 54 ALR 702, 706-707; Ann., 105 ALR 1346, 1350). Thus, an agreement that any renewal notes would be endorsed by all of the original endorsers is provable by use of parol evidence, and, if proved, would make the note unenforceable against the guarantors whose delivery was conditional upon the procurement of all such endorsements.
In granting summary judgment to the bank, Special Term stated, as noted before, that "public policy estops the defendants from showing that a note made payable and delivered to a bank was not to be enforced unless there was compliance with certain oral conditions (Mount Vernon Trust Co. v. Bergoff, 272 N.Y. 192, 196)." *497 While Mount Vernon Trust Co. did express a public policy concern that bank examiners might be deceived by an unenforceable note which appears on its face to be an asset of a bank, that case involved a totally fictitious note which was never intended to be enforced. Carried to its logical extreme, Special Term's reliance on Mount Vernon Trust Co. could be read as supporting a view that the public policy expressed therein would prevent the maker or guarantor of a note held by a bank from ever raising any defenses to that note. This, of course, is not what was intended in that case, and it would be completely contrary to law. (Uniform Commercial Code, § 3-306.)
Nor does Meadow Brook Nat. Bank v Bzura (20 AD2d 287) suggest a different result. At first blush, that case seems nearly identical to this. There a guarantor unsuccessfully sought to defeat a motion for summary judgment by claiming that he signed the guarantee only after he was promised by a bank officer that the guarantee would not become effective unless and until a primary guarantee was first obtained from two other persons. Of vital significance in that case was the nature of the guarantee upon which the lender sought to recover. The Appellate Division described a portion of the guarantee as follows: "The guarantee provided that the guarantor `unconditionally guarantees to the Bank' the payment of indebtedness incurred by the company" (p 288). Thus, the alleged condition precedent in that case contradicted the express terms of the written agreement, and could therefore not be proved by parol evidence. (Hicks v Bush, 10 N.Y.2d 488, 491.) What distinguishes Meadow Brook Nat. Bank (supra) from this case is that the guarantee here is not unconditional.[2] The condition precedent which is alleged here, namely, the procurance of other endorsements, in no way contradicts the express terms of the written agreement and, therefore, it may be proved by parol evidence. We agree with our dissenting colleague that we should not misunderstand and misapply the parol evidence rule so as to "undermine the rules of commercial and banking conduct" (p 499). Likewise, we share his *498 concern that we should not permit the exceptions to the parol evidence rule to become "the haven of either the devious or the negligent" (p 502). However, such concerns do not warrant a different result here. Our holding today does not sanction the use of "devious devices of the untrustworthy who can always conceive a less than flat contradiction to avoid their written obligations" (p 499). There is no basis in the record for characterizing the appellants as "untrustworthy", "devious", or "negligent". Had the bank here merely insisted that appellant "unconditionally guarantee" repayment of the loan, as was done in Meadow Brook Nat. Bank (supra), then there would be no room for the "untrustworthy" or even the trustworthy to assert a "less than flat contradiction" of the express terms of the agreement. Our task is not to assist lending institutions in their collection matters by rewriting their agreements so as to remedy the omissions made by their draftsmen.
Accordingly, we would reverse the order of the Appellate Division and deny the motion for summary judgment.
Chief Judge BREITEL (dissenting).
I would affirm the order of the Appellate Division, thus precluding defendants from establishing by oral testimony that they are not bound by their written endorsement and guarantee.
The facts are correctly and fully stated in the majority opinion, as are the applicable rules of law. The disagreement is how the rules of law are to be applied to the facts. The problem of defaulting debtors, endorsers, and guarantors who seek to avoid their written obligations is a recurring one and of vital concern to the banking and commercial communities.
The ultimate principle is a simple one, namely, that an integrated written obligation may not be avoided by the tender of parol, usually oral, evidence which contradicts or varies the written obligation. The great and hoary exception is that a party is always free to establish by parol evidence that the written undertaking by which he is apparently bound, never came into existence because of an agreed precondition that it not take effect unless and until the extraneous precondition has come to pass. The great and hoary exception has its own exception, namely, that it is inapplicable if the proferred parol evidence itself contradicts or varies the terms of the written undertaking sought to be avoided. In short, the precondition must be consistent with the written undertaking.
*499 Illustratively, if one agrees to guarantee a debt unconditionally, it is not an admissible precondition that the guarantee was indeed not unconditional but depended upon some extraneous event or undertaking by another (Meadow Brook Nat. Bank v Bzura, 20 AD2d 287; cf. Royal Nat. Bank of N. Y. v Sonwel Realty Corp., 39 AD2d 529). Sometimes, as in the Meadow Brook case, the inconsistency will be a flat contradiction; other times it will be that the inconsistency would be a variance, as in Metropolitan Bank of Syracuse v Brennan (48 AD2d 254). It is to ignore the principle and the appendant rules to assume that only explicitly contradictory oral preconditions are precluded.
The principle and the appendant rules are parallel and indeed share an analytical genesis with the parol evidence rule, a rule of substantive law and not of evidence (Restatement, Contracts, § 237, comment a). To misunderstand them and therefore to misapply them is to undermine the rules of commercial and banking conduct, and to suffer the devious devices of the untrustworthy who can always conceive a less than flat contradiction to avoid their written obligations.
In the Metropolitan Bank case (supra), a twin to this one, Mr. Justice SIMONS on behalf of an unanimous Appellate Division, applied with clarity the distinctions, in striking down the alleged oral preconditions to effective delivery of the defendant's guarantee. Thus he said (48 AD2d 254, at pp 256-257):
"Nevertheless, it is a little late in the day for defendants to claim that this note never became effective. It was executed by the corporation and the individual defendants as comakers for good consideration and physically delivered to the bank which accepted it. At least three payments in reduction of the debt were made before it was claimed that conditional delivery was agreed upon by the bank, and payments on the note continued for a year thereafter before the default, followed by a judgment against the corporation. The position defendants urge would leave the bank with a renewed note which substituted the credit of the defaulting corporation alone for what had been defendants' liability on the original note and it would relieve defendants of any further responsibility for the debt.
"Manifestly, the note became a binding obligation as between the bank and the corporation. Defendants do not deny that they signed it  what they really suggest is that notwithstanding those facts and conceding the parties' performance *500 on the instrument, they may still vary the terms of their personal obligation by parol evidence. The rule is stated in Hicks v Bush (10 N.Y.2d 488, 491): `Parol testimony is admissible to prove a condition precedent to the legal effectiveness of a written agreement (see Saltzman v Barson, 239 N.Y. 332, 337; Grannis v Stevens, 216 N.Y. 583, 587; Reynolds v Robinson, 110 N.Y. 654; see, also, 4 Williston, Contracts [3d ed, 1961], § 634, p 1021; 3 Corbin, Contracts [1960 ed], § 589, p 530 et seq.), if the condition does not contradict the express terms of such written agreement. (See Fadex Foreign Trading Corp. v Crown Steel Corp., 297 N.Y. 903, affg 272 App Div 273, 274-276; see, also, Restatement, Contracts, § 241.) A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement. (See, e.g., Illustration to Restatement, Contracts, § 241.) Upon the present appeal, our problem is to determine whether there is such a contradiction.' (See, also, Procopis v G.P.P. Rests., 43 AD2d 974; Spina v Ferentino, 30 AD2d 1035.)
"Applying that rule, and confronted with the performance on the instrument, it is apparent that defendants' proposed parol evidence is inconsistent with the writing in three respects and contradicts express terms of the note contrary to its merger provision in at least the second and third instances (see Meadow Brook Nat. Bank v Bzura, 20 AD2d 287).
"First, the parol evidence makes an unconditional obligation conditional because as comakers of the note defendants are absolutely and unqualifiedly liable according to its terms. There is no claim that the debt is invalid, that the money was not loaned or that the default did not occur. As comakers therefore the note makes defendants unconditionally liable for the debt but the proposed parol evidence would contradict this unconditional liability.
"Second, it makes an independent obligation dependent. Defendants agreed to be jointly and severally liable on the note. Their assertion that the enforcement of liability against them depends upon the collective liability of themselves plus O'Connor and Kelley destroys the several nature of obligation undertaken by the comakers (see General Obligations Law, § 15-101).

*501 "Third, it makes the primary obligation of defendants secondary, whereas the instrument classifies the liability of each signer of the instrument, whether borrower, comaker or guarantor, as primary."
The principle and appendant rules are universally accepted and applied with the same analysis (see Ann., Parole Evidence  Guaranty, 33 ALR2d 960, 978, 1010-1012, and the cases cited). Never has there been a failure, when the rules are properly analyzed, to preclude varying as well as explicitly contradictory preconditions to effective delivery of the written obligation.
In determining whether the varying condition is precluded it is essential to determine the completeness of the written undertaking (id., and cases cited). This was the teaching of Hicks v Bush (10 N.Y.2d 488, 491) in which, as quoted by Mr. Justice SIMONS, it was observed that (48 AD2d, at p 257) "A certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only those which in a real sense contradict the terms of the written agreement. (See, e.g., Illustration to Restatement, Contracts, § 241.)" (Cf. Fogelson v Rackfay Constr. Co., 300 N.Y. 334, 338, 340.)
Key to the analysis is not whether the oral precondition is explicitly contradictory of a term of the integrated written obligation, but whether "in a real sense" it contradicts (and thus varies) the terms of the obligation. In the instant case defendant Rochman was the fourth endorser to sign the renewal note. The alleged precondition was the signing by still a fifth endorser as on the prior note. The endorsement and guarantee clauses to which defendant endorsers appended their signatures read as follows:
"FOR VALUE RECEIVED, the undersigned and each of the undersigned in addition to the obligations imposed by endorsement and waiving of notice of every character and nature, hereby become a party to, adopt, agree to, accept, guarantee and assume all the terms, conditions and waivers contained in the note on the reverse side hereof, and guarantee the payment of said note when due and consent without notice of any kind to any and all extensions of time made by the holder of said note.

*502 "Nothing except cash payment to the Trust Company and/or the holder of said note shall release the undersigned or any of the undersigned."
It is not necessary to emphasize how "contradictory" defendants' present contentions and proferred oral evidence are to the terms of the endorsement and guarantee, especially the second paragraph, set forth above.
The quoted undertaking by the endorsers-guarantors states in words as broad as language permits that each of the signers, jointly and severally, namely, "the undersigned and each of the undersigned", "adopt, agree to, accept, guarantee and assume all the terms, conditions and waivers contained in the note on the reverse side". This is language as strong if not stronger than that which would bind an accommodation co-maker.
The issue is a substantial one, not confined in consequences to those concerned only with nice legal distinctions. At its root is the way commercial men do business and the conditions of speedy transactions the integrity of which are crucial to the extension of credit. The exceptions to the parol evidence rule are not intended to be the haven of either the devious or the negligent, when others justifiably rely on their written engagements.
Accordingly, I dissent and vote to affirm the order of the Appellate Division.
Order reversed, with costs, and motion for summary judgment denied.
NOTES
[1] We note that, in the papers submitted in support of the motion for summary judgment, no affidavit was submitted by Dean and none of the papers contain a denial that Dean actually made this alleged agreement. Likewise, in his affidavit, Lambui neither denies that Rochman told him to secure "all the endorsements" on the June 2 note, nor claims that he misunderstood Rochman's instructions.

Interestingly, Horowitz' signature on the reverse side of the note appears below the signatures of Feeney, Rochman, and Goldberg. Assuming that it can be inferred from this order in the listing of the endorsements that the note already contained four endorsements when presented to Lambui, it would seem that Rochman's instruction to Lambui that he "make sure that all the endorsements were on the Note" must have referred to an endorsement not already on the note  i.e., an endorsement by D'Onofrio.
[2] The guarantees on both the March 4 and June 2 notes provided as follows: "FOR VALUE RECEIVED, the undersigned and each of the undersigned in addition to the obligations imposed by endorsement and waiving of notice of every character and nature, hereby become a party to, adopt, agree to, accept, guarantee and assume all the terms, conditions and waivers contained in the note on the reverse side hereof, and guarantee the payment of said note when due and consent without notice of any kind to any and all extensions of time made by the holder of said note."